## KRENTLER–ARNOLD HINGE LAST CO. v. BELCHER.

(District Court, D. Massachusetts. July 24, 1924.)

No. 1853.

1. **Patents ⟨key⟩328—842,319, for shoe last, held not infringed.**
   The Krentler patent, No. 842,319, for a shoe last, *held* not infringed.
2. **Patents ⟨key⟩328—969,244, for shoe last, claim 1, held void for lack of invention.**
   The Carl patent, No. 969,244, for a shoe last, claim 1, *held* void for lack of invention.
3. **Patents ⟨key⟩328—1,195,266, for shoe last, held valid and infringed,**
   The Peterson patent, No. 1,195,266, for a shoe last, *held* valid and entitled to a broad construction, and, as so construed, *held* infringed.

In Equity. Suit by the Krentler-Arnold Hinge Last Company against George E. Belcher, doing business as George E. Belcher Last Company. Complainant's bill dismissed, and decree for defendant on counterclaim.

James R. Hodder, of Boston, Mass., for plaintiff.
Ellis Spear, Jr., of Boston, Mass., for defendant.

LOWELL, District Judge. This is a suit for the infringement of letters patent No. 842,319, granted to G. A. Krentler on January 29, 1907, and letters patent No. 969,244, granted to Rudolph Carl on September 6, 1910, relating to lasts used in the manufacture of shoes. The defendant denies that he infringes the Krentler patent, alleges that the Carl patent is void, and sets up by way of counterclaim that the plaintiff infringes letters patent No. 1,195,266, granted to Otto A. Peterson on August 22, 1916, one-half interest in which is owned by him.

The defendant had for many years been a licensee of the plaintiff under a license covering many patents, which was granted first in 1902. The license was canceled in 1913, and a second one issued, which enumerated, among many other patents, the Krentler patent. It did not include the Carl patent, though that patent then belonged to the plaintiff, and no specific license was ever granted the defendant under the Carl patent. In 1919 the defendant canceled the license, but by arrangement with the plaintiff continued to make lasts covered by some of the plaintiff's patents, and to buy parts, which the plaintiff sold to the defendant; this being its method of collecting royalties for the use of the invention. One of the clauses in the license provided that a licensee could not question the validity of any of the patents mentioned in the license. After canceling the license, the defendant made lasts which he contended were covered by the Peterson patent, owned by him.

A preliminary motion of the defendant was that the bill of complaint should be dismissed as to the Krentler patent, as it had expired, and no injunctive relief could be granted under it. This motion was denied, the court at that stage of the case not being satisfied that the defendant had not estopped himself by being a licensee under

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the patent. The motion might well have been granted, but, in the view which the court takes of the Krentler patent, no right of the defendant was affected by the denial of the motion.

The first contention of the plaintiff is that the defendant is estopped to deny the validity of either the Krentler or the Carl patent, because he had been a licensee, enjoying the benefits of the invention covered by the patents, for many years. This contention is unsound as to the Carl patent, which never was mentioned in any license, and therefore not affected by the clause of the license above described. As to the Krentler patent, the defendant contends that he is not estopped to deny its validity after having canceled the license, as he never made use of the invention covered by the patent, either before or after the cancellation of the license, but only of certain other patents covered by it. The facts in the case support the contention of the defendant; for the reasons hereinafter given, I am of opinion that the defendant's lasts do not infringe the Krentler patent.

[1] The next contention of the plaintiff is that the defendant's lasts, Plaintiff's Exhibits 3 and 4, which are stipulated by the defendant to be lasts made by him, infringe the Krentler patent. That patent, however, is, in my opinion, a very limited one. The patents in suit all relate to lasts on which shoes are made, and more particularly to lasts called "hinged" lasts. Shoes were formerly made only on solid lasts, which were objectionable because, after the shoe had been made, it was difficult to withdraw the last from the shoe without damaging the upper. Some years ago various kinds of hinged lasts were devised, the purpose of which was to enable the lasts to be withdrawn from the shoe by moving the heel part of the last forward toward the fore part, and thereby decreasing its length, so that it could be withdrawn from the shoe without stretching the upper. Various kinds of hinged lasts were known in the prior art; one which had been well known for some time, and was covered by a patent now expired, had a so-called "knuckle" joint. This was a last with a projection on the heel part or the fore part, which fitted into a corresponding socket in the other part. The knuckle was made in a circular form and adapted to turn in a corresponding circular recess. One objection to this form of last was that it would not withstand the strain to which it was subjected in the manufacture of shoes, but would bend or buckle before the shoe was completed. Various expedients were adopted to remedy this defect. The specific expedient adopted by the plaintiff in the patent in suit was the forming of a protuberance or "angular surface" on the periphery of the circular knuckle joint. which would engage with the socket and make it more difficult to turn the shoe from its extended or collapsed position, or vice versa. In the Krentler patent in suit the following disclaimer is contained:

"In the present case I limit my claims to the species of contacting last faces having a co-operating angular surface for securing the desired locking effects. * * *"

The claims, three in number, all mention the rigid angular or wedging surface. Great stress is laid on the expression, contained in claims 1 and 2, that the last is "constructed to maintain the parts at

rest when the last is collapsed, and to offer increasing resistance in moving away from collapsed position" (claim 1), and "being constructed to offer increasing resistance to moving away from the lengthened position" (claim 2). The plaintiff strenuously contends that any method of providing increased resistance is covered by the claims, and points out the fact that the patentee makes the following statement in a part of his patent before the disclaimer which I have already quoted. The statement is as follows:

"The principle upon which the locking device operates is the crowding or wedging of one part past another 'when the heel part is turned on its pivot, and I intend to claim the same herein broadly."

I am of the opinion that this expression does not aid the plaintiff. Whatever may have been his intention, he included the disclaimer and referred in each claim to the "rigid angular or wedging surface" (first claim), "angular or wedging surface" (second claim), and "protuberance on the fore part extension" (third claim). There is no such anuglar surface in the Exhibits 3 and 4, and therefore, in my opinion, the defendant's lasts do not infringe the Krentler patent.

[2] The first claim of the Carl patent, the only one relied on by the plaintiff, is for a last having the knuckle joint, a part of which is made not by sawing or cutting the wood in any way, but by breaking it. In my opinion this claim is void for lack of patentability. The knuckle feature was old. The method of making it by breaking part of it, instead of sawing it, was merely a shop expedient, and there was the evidence of several witnesses that similar things had been done many years ago in connection with lasts. It is true that the lasts which the witnesses testified about as being partly sawed and partly broken were not of the knuckle joint type, but in my opinion there is no invention in adapting a well-known expedient in the making of lasts to a specific form of last in connection with which it had not been used. The plaintiff lays stress on the shoulder shown in the Carl patent, which it says performed the important function of keeping the two parts of the last in alignment under pressure. This feature is not specified in the claim, and, in view of the more specific character of some of the other claims, is, in my opinion, not covered by it, as claim 1 was evidently intended to be a very broad claim, including any knuckle joint formed partly by sawing and cutting and partly by breaking. However, if the claim could properly be construed as covering a shoulder, I am of the opinion that this would not assist the plaintiff, as such shoulders were well known in the prior art.

[3] This disposes of the plaintiff's claim for infringement. There remains the question of the counterclaim. The defendant is the part owner of the Peterson patent. In that patent the function of holding the last rigidly in either its lengthened or collapsed position is brought about by the use of a horseshoe link connecting the two parts of the last. The link is of steel, but has a slight compressibility. It is so attached to the two parts of the last that, when the last is in its lengthened position, ready to be used in the manufacture of shoes, the two ends of the horseshoe link are placed a slight distance further apart

than their normal position would be, so that the resiliency of the link under this strain operates to keep the two parts of the last together. The last can be flexed or broken by the use of force in bending it, which results in pulling the ends of the horseshoe links still further apart, past a center, when the two ends of the horseshoe link tend to come together and hold the parts of the last firmly in the collapsed position. The link in this position also is subject to some strain.

The plaintiff contends on this branch of the case, where he is practically a defendant, that he does not infringe for two reasons. In the first place, his last, Defendant's Exhibit C, stipulated to be a correct copy of lasts made by the plaintiff's licensees, contains a knuckle joint, and the Peterson patent does not show such a joint. In the second place, he contends that his last is covered by another Krentler patent (W. A. Krentler this time), No. 1,459,061, showing the construction which he uses. As to the first contention, it is not, in my opinion, well taken. The knuckle joint was shown in the prior patent, which has elapsed, and this feature could freely be used by anyone.

The second point raises a very interesting question. The second Krentler patent shows a rigid link in connection with two springs. The Krentler Company contends that its patent is valid and affords it protection. In the first place, it is to be noted that the Krentler Company does not in practice use the two springs shown in its patent, but only one spring, which is much stronger than either of the two springs as shown in the patent, and is very much like the Peterson horseshoe hinge in form. It was in evidence that, at the time when Belcher canceled the license, there was considerable correspondence between the parties and their attorneys. At that time the attorney for the Krentler Company requested Belcher to assign to it the Peterson patent. This, however, was not done. After that the Krentler patent, No. 1,459,061, was used. Belcher contends that this was got up by a very clever person, thoroughly familiar with the last-making art, in order to have some kind of a patent to meet the Peterson patent. The facts in the case, especially the one already mentioned, that in practice the Krentler Company uses on spring, instead of two, a heavier spring and one similar in shape to the Peterson horseshoe wedge, lends force to this contention.

The Krentler Company, however, strenuously contends that the Peterson patent is limited to a construction where only one member is used, as the expression throughout that patent is "a member," and there is no suggestion in the patent that a link and spring could be used instead of the horseshoe spring wedge of the Peterson patent. The question is a difficult one. It appears from the evidence of the prior art that Peterson invented an ingenious device whereby all the required functions of a hinged last could be furnished with the minimum of expense and the smallest number of parts. He provides for rigidity in the extended and collapsed position, and also for the feature of being able to break the last and withdraw it from the shoe. This he does by the use of a horseshoe link, merely one mem-

ber. It seems to me that the Peterson patent is one of considerable merit and should be broadly construed. While I am not prepared to say that it would cover any arrangement of a link and a spring, it is my opinion that it does cover the construction used by the Krentler Company. It is not necessary to decide on the validity of the Krentler patent, No. 1,459,061, because, as I have already said, the Krentler Company does not follow the construction shown in that patent.

The Krentler Company earnestly contends that as in the prior art there was a patent to Clausing, No. 1,085,668, which showed a link and a spring, it has the right to use a link and a spring without running the danger of an infringement of the Peterson patent. This contention is, I think, unsound. The function of the spring in the Clausing patent, No. 1,085,668, was quite different from the horseshoe wedge of Peterson or the spring of the second Krentler patent. Belcher contends that the Krentler Company used a link in connection with a spring only as a subterfuge in order to get around the Peterson patent, and also that the function of holding the last rigidly in its extended position and allowing its breaking by the use of considerable force is performed in the Krentler device by the spring, and that the link has no function. This is an exaggeration, but it seems to me that the important part of the device is the spring, and not the link. I am of opinion, therefore, that the Krentler last as used with one strong U-shaped spring, although used in connection with a link, is an infringement of the Peterson patent. The defendant's contention that, because the word "yieldingly" is used in the Peterson patent, that patent does not cover a device which is rigid enough to withstand the strains encountered in making shoes requires merely the statement of it to show its absurdity.

The Krentler Company refers to various decisions on many of their patents. The only case where the patent in suit is involved is that mentioned on page 9 of their brief. They apparently lay great stress on this case, as they print a copy of it at the end of the brief. On examination it appears that the defendant in the case consented to the decree. The fact is, then, that this patent in suit was decided to be "a good and valid patent," not by Hon. Julius M. Mayer, of the United States District Court for the Southern District of New York, but by the New York Last Company, which was the defendant in the case and agreed to the final decree.

The Krentler Company also lays stress on the file wrapper of the Peterson patent and on the arguments of Mr. Smith, the patent solicitor, in the course of proceedings before the Patent Office. In the course of these proceedings, however, there was no withdrawal of any claim, and no estoppel can arise for that reason. I am very doubtful whether as a matter of law it is proper to consider the scope of a claim merely on account of what a patent solicitor said to the examiner. However that may be, I find nothing in the file wrapper which would estop Peterson from claiming that the defendant's device was an infringement. It is true that he had in mind only one member, and the peculiar advantage of his device lies in that very fact, that he could accomplish the desired result as well, or better, by using one member as had been done in the prior art by using two or more. I do not think the fact that he had in mind merely one member prevents

him from saying that his device cannot be legally imitated by using two members and thereby producing a device which will work, but the most important features of which are brought about by the use of a heavy spring suspiciously like the spring wedge of Peterson.

The prayers of the plaintiff are refused. The prayer in the counter-claim is granted. A decree may be entered, dismissing the bill against the defendant and allowing .the defendant's counterclaim as valid, and the Peterson patent as infringed by the plaintiff.