LEMAN, ADMINISTRATOR, et al. *v.* KRENTLER-ARNOLD HINGE LAST CO.

No. 332. Argued January 13, 14, 1932.—Decided February 15, 1932.

Mr. *Ellis Spear, Jr.,* for petitioners.

Mr. *Robert Cushman,* with whom Mr. *Otto F. Barthel* was on the brief, for respondent.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

This is a contempt proceeding against the respondent, Krentler-Arnold Hinge Last Company, for violation of a permanent injunction granted in an infringement suit.

In that suit, which was brought by the respondent, a Michigan corporation, in the Federal District Court for

the District of Massachusetts, the bill of complaint for the infringement of the respondent's patents was dismissed and the counterclaim of the present petitioners for the infringement of their patent (Peterson patent No. 1,195,-266, for hinged lasts for shoes) was sustained. 300 Fed. 834. The decree, as modified, was affirmed by the Circuit Court of Appeals. 13 F. (2d) 796. The decree perpetually enjoined the respondent from making, using or selling lasts containing the invention covered by designated claims of the petitioners' patent and "any substantial or material part thereof, or any substantial equivalent or colorable imitation thereof." Final decree, after accounting, was entered on March 1, 1928. 24 F. (2d) 423. Thereafter the respondent placed upon the market a "sliding link" hinge which was claimed to be a new invention. The petitioners then (June 4, 1929) brought the present proceeding for contempt in the court which had entered the decree.

The order to show cause, with the supporting affidavits, was served upon the respondent by the delivery of copies to its attorney of record in the infringement suit and by the mailing of copies to the respondent at its office in Michigan. On June 10, 1929, the attorney of record for the respondent in the infringement suit filed with the clerk of the court a withdrawal of appearance. The respondent then appeared specially in the contempt proceeding and moved to dismiss the petition "for lack of jurisdiction over the respondent." In support of the motion, affidavits were presented to the effect that the authority of the attorney of record in the infringement suit was terminated on the entry of the final decree, and that the respondent had no office or place of business in Massachusetts and had not manufactured, sold or used within that State the device of which the petitioners complained. The motion was denied. Upon hearing, the District Court held the respondent to be guilty of "civil contempt"

for deliberate violation of the injunction and ordered a reference to a master to take an account of the profits made by the respondent through such violation and to ascertain the petitioners' costs and expenses in the contempt proceeding. On the master's report, the District Court entered a decree for the recovery by the petitioners of $39,576.26 as profits, together with counsel fees, expenses and interest, making a total of $49,292.89. On appeal, the Circuit Court of Appeals deemed it to be clear that the respondent's new device answered in every respect the claims of the petitioners' patent and that "the question of infringement is not doubtful or even merely colorable, but certain." The Circuit Court of Appeals sustained the jurisdiction of the District Court but held that profits could not be recovered. Certain expenses were also disallowed, and the decree of the District Court, with respect to the amount of the recovery, was vacated. 50 F. (2d) 699; on rehearing, *id.*, 707. This Court granted a writ of certiorari.

*First.* The question of jurisdiction turns upon the nature and effect of the decree in the infringement suit and the relation to that suit of the contempt proceeding. When the respondent brought the suit in the Federal District Court for the District of Massachusetts, it submitted itself to the jurisdiction of the court with respect to all the issues embraced in the suit, including those pertaining to the counterclaim of the defendants, petitioners here. Equity Rule 30. See Langdell's Eq. Pleading, c. 5, § 119; *Frank L. Young Co.* v. *McNeal-Edwards Co.*, 283 U. S. 398, 400. The decree upon the counterclaim bound the respondent personally. It was a decree which operated continuously and perpetually upon the respondent in relation to the prohibited conduct. The decree was binding upon the respondent, not simply within the District of Massachusetts, but throughout the United States. *Macaulay* v. *White Sewing Machine Co.*, 9 Fed. 698; *Kessler* v.

*Eldred*, 206 U. S. 285, 288; *Rubber Tire Co.* v. *Goodyear Co.*, 232 U. S. 413, 417; *Hart Steel Co.* v. *Railroad Supply Co.*, 244 U. S. 294, 298, 299; *Louisville & Nashville R. Co.* v. *Western Union Telegraph Co.*, 250 U. S. 363, 368; *Toledo Co.* v. *Computing Co.*, 261 U. S. 399, 426. The respondent could not escape the decree by removing from, or staying without, the District of Massachusetts. Wherever it might conduct its affairs, it would carry with it the prohibition. Disobedience constituted contempt of the court which rendered the decree, and was none the less contempt because the act was committed outside the district, as the contempt lay in the fact, not in the place, of the disobedience to the requirement.

In view of the nature and effect of the decree in the infringement suit, it cannot be said that the suit was terminated in the sense that the court had no further relation to the party subject to its permanent injunction. The terms of the injunction continued the relation. The question is not one of an attempted rehearing of the merits of the controversy which was determined by the final decree, or of the modification of that decree, after the expiration of the term in which an application for that purpose could properly be made. Equity Rule 69; *Roemer* v. *Simon*, 91 U. S. 149; *Brooks* v. *Railway Co.*, 101 U. S. 443; *Bronson* v. *Schulten*, 104 U. S. 410, 415. This proceeding was for the enforcement of the decree, and not to review or alter it. It was heard and determined as a proceeding for civil, not criminal, contempt. 50 F. (2d) at p. 701. The question of the relation of such a proceeding to the main suit was fully considered in the case of *Gompers* v. *Bucks Stove & Range Co.*, 221 U. S. 418, and it was determined that the proceeding was not to be regarded as an independent one, but as a part of the original cause. The court said: " Proceedings for civil contempt are between the original parties and are instituted and tried as a part of the main cause." *Id.*, at

pp. 444, 445. The distinction was made in this respect between such proceedings and those at law for criminal contempt which " are between the public and the defendant, and are not a part of the original cause." In the *Gompers* case, the contempt proceeding had been instituted after the entry of the final decree awarding the permanent injunction and pending an appeal from that decree. *Id.*, pp. 421, 422. This Court held that the proceeding had been improperly treated as one for criminal contempt, and, as there had been a complete settlement of all matters involved in the equity suit, the contempt proceeding was necessarily ended. The conclusion of the Court was thus stated (*id.*, pp. 451, 452): " When the main case was settled, every proceeding which was dependent on it, or a part of it, was also necessarily settled—of course without prejudice to the power and right of the court to punish for contempt by proper proceedings. *Worden* v. *Searls*, 121 U. S. 27. If this had been a separate and independent proceeding at law for criminal contempt, to vindicate the authority of the court, with the public on one side and the defendants on the other, it could not, in any way, have been affected by any settlement which the parties to the equity cause made in their private litigation. But, as we have shown, this was a proceeding in equity for civil contempt where the only remedial relief possible was a fine payable to the complainant. The company prayed ' for such relief as the nature of its case may require,' and when the main cause was terminated by a termination of all differences between the parties, the complainant did not require and was not entitled to any compensation or relief of any other character. The present proceeding necessarily ended with the settlement of the main cause of which it is a part." See *Michaelson* v. *United States*, 266 U. S. 42, 64, 65; *Oriel* v. *Russell*, 278 U. S. 358, 363.

As the proceeding for civil contempt for violation of the injunction should be treated as a part of the main cause, it follows that service of process for the purpose of bringing the respondent within the jurisdiction of the District Court of Massachusetts was not necessary. The respondent was already subject to the jurisdiction of the court for the purposes of all proceedings that were part of the equity suit and could not escape it, so as successfully to defy the injunction, by absenting itself from the district. In *Minnesota Co.* v. *St. Paul Co.*, 2 Wall. 609, 633, this Court said that it had decided "many times" that when a bill is filed in the federal court to enjoin a judgment of that court, it was "not to be considered as an original bill, but as a continuation of the proceeding at law; so much so that the court will proceed in the injunction suit without actual service of subpœna on the defendant, and though he be a citizen of another State, if he were a party to the judgment at law." See *Dunn* v. *Clarke*, 8 Pet. 1, 3; *Krippendorf* v. *Hyde*, 110 U. S. 276, 285; *Carey* v. *Houston & Texas Ry. Co.*, 161 U. S. 115, 128; *Merriam Co.* v. *Saalfield*, 241 U. S. 22, 30, 31. For similar reasons, after a final decree a party cannot defeat the jurisdiction of the appellate tribunal by removing from the jurisdiction, as the proceedings on appeal are part of the cause. *Nations* v. *Johnson*, 24 How. 195, 203, 204. As this Court said in *Michigan Trust Co.* v. *Ferry*, 228 U. S. 346, 353, where "there is service at the beginning of a cause, or if the party submits to the jurisdiction in whatever form may be required, we dispense with the necessity of maintaining the physical power and attribute the same force to the judgment or decree whether the party remain within the jurisdiction or not. This is one of the decencies of civilization that no one would dispute." And so, with respect to the application of Article IV, § 1, of the Constitution, "if a judicial proceeding is begun with jurisdiction over the person of the party concerned it is

within the power of a State to bind him by every sub-sequent order in the cause." *Id.*

In this view, nothing more was required in the present case than appropriate notice of the contempt proceeding, and that notice the respondent received. We do not need to consider the effect of the service of the order to show cause with supporting affidavits upon the attorney who still appeared of record as the attorney for the respondent in the equity suit, but whose authority was alleged to have been terminated, or any question of the sufficiency of constructive notice, as the respondent had actual no-. tice. While the respondent appeared specially. for the purpose of objecting to the jurisdiction of the court, this objection was not upon the ground that the respondent did not have notice, which manifestly it did have, but that it had not been brought into the proceeding by serv-ice of process in that proceeding, which in view of its relation to the cause was unnecessary. Its objection on that ground being overruled, the respondent contested its liability.

We are of the opinion that the District Court had juris-diction of the contempt proceeding and of the respondent.

*Second.* The Circuit Court of Appeals refused recovery of profits upon the ground that in a proceeding for civil contempt the relief should be based upon the " pecuniary injury or damage" which the act of disobedience caused the complaining party, including such reasonable ex-penses as were incurred in the bringing of the proceeding. There is no question here that the respondent had made profits through the infringing sales in violation of the injunction, and the amount of the profits was ascertained, but the appellate court held that the petitioners were limited to the damages caused by such sales and that no damages had been shown. We think that the court erred in imposing this limitation. The fact that a proceeding. for civil contempt is for the purpose of compensating

the injured party, and not, as in criminal contempt, to redress the public wrong, does not require so narrow a view of what should be embraced in an adequate remedial award.

While the distinction is clear between damages, in the sense of actual pecuniary loss, and profits, the latter may none the less be included in the concept of compensatory relief. In a suit in equity against an infringer, profits are recoverable not by way of punishment but to insure full compensation to the party injured. As this Court said in *Mowry* v. *Whitney,* 14 Wall. 620, 653: " The profits which are recoverable against an infringer of a patent are in fact a compensation for the injury the patentee has sustained from the invasion of his right." The court of equity in such cases applies familiar principle in " converting the infringer into a trustee for the patentee as regards the profits thus made." *Packet Co.* v. *Sickles,* 19 Wall. 611, 617. This is not to say that there is an actual fiduciary relation which would give the right to an accounting for profits regardless of the existence of a basic claim to equitable relief. *Root* v. *Railway Co.,* 105 U. S. 189, 214, 215. Referring to the case last cited, this Court succinctly stated the controlling principle in its opinion in *Tilghman* v. *Proctor,* 125 U. S. 136, 148, as follows: " But, as has been recently declared by this court, upon an elaborate review of the cases in this country and in England, it is more strictly accurate to say, that a court of equity, which has acquired, upon some equitable ground, jurisdiction of a suit for the infringement of a patent, will not send the plaintiff to a court of law to recover damages, but will administer full relief, by awarding, as an equivalent or a substitute for legal damages, a compensation computed and measured by the same rule that courts of equity apply to the case of a trustee who has wrongfully used the trust property for his own advantage." Profits are thus allowed " as an equitable measure of com-

pensation." *Hamilton Shoe Co.* v. *Wolf Brothers*, 240 U. S. 251, 259. See, also, *Dowagiac Manufacturing Co.* v. *Minnesota Plow Co.*, 235 U. S. 641, 647. In view of the principles governing the broader relief obtainable in equity, as contrasted with those applicable in courts of law, it is apparent that there is no necessary exclusion of profits from the idea of compensation in a remedial proceeding.

The respondent insists that this contempt proceeding is not a suit in equity, but, as we have seen, the proceeding is a part of the main cause in equity and is for the enforcement of the decree, and there is no reason why in such a proceeding equitable principles should not control the measure of relief to be accorded to the injured party. It is also urged that an award of profits involves a discovery and accounting from a party charged with a penal liability. This argument is also based on a misconception of the nature of the proceeding, which is not penal but remedial, and the remedy should be complete. Accordingly it has been repeatedly assumed that, in a proceeding for civil contempt for disobedience to an injunction granted in an infringement suit, the profits derived from the violation of the injunction are recoverable. *Worden* v. *Searls*, 121 U. S. 14, 25; *Matter of Christensen Engineering Co.*, 194 U. S. 458, 460; *Gordon* v. *Turco-Halvah Co.*, 247 Fed. 487, 490, 492; *McKee Glass Co.* v. *H. C. Fry Glass Co.*, 248 Fed. 125, 127.

We are of the opinion that the District Court properly allowed the profits in question, and, in this respect, the decree of the Circuit Court of Appeals modifying the decree of the District Court is reversed and that of the District Court affirmed.

*C. C. A. reversed.*
*D. C. affirmed.*

MR. JUSTICE MCREYNOLDS is of the opinion that the proceedings should have been dismissed for lack of jurisdiction over the respondent.