**HAYSLIP et al. v. TEXTAG CO. et al.**

Civ. No. 3825.

United States District Court,
N. D. Georgia, Atlanta Division.

Nov. 6, 1950.

Henry M. Hatcher, Jr., Atlanta, Ga., for plaintiffs.

G. Eugene Ivey, Atlanta, Ga., for defendants.

Findings of Fact and Conclusions of Law.

ANDREWS, Chief Judge.

An interlocutory decree upon the original complaint in this action was entered by the Court on the 3rd day of August, 1950, in which the Court found that the complainants were the owners of a valid patent upon a laundry identification system, U. S. Patent No. 2,455,007, and that the defendants were infringing upon the patent by manufacturing a laundry identification system known as The Textag System; and in which the Court ordered a permanent injunction "Against the defendants, their agents, servants and anyone acting by or through or for them, restraining each of them from manufacturing or selling any tags, laundry identification systems or other articles covered by U. S. Patent No. 2,-455,007, and from selling any tags, laundry

identification systems or other articles under the trademark "Textag", and from entering into any negotiations to so sell and from committing any acts of infringement on the patent and trademark rights of complainants as set out in the complaint."

Defendant R. M. Goddard, Sr. admits in his affidavit filed in response to this motion, and the Court so finds, that subsequent to the service of the injunction of this Court upon him he has sold and is presently selling laundry identification tags known as "single tags," being tags with numbers on one side only, and that these tags are the tags which The Textag Company had on hand in considerable quantity on the date of the injunction. The single tags are the same tags which were employed in the Textag Lot System, the commercial device being manufactured prior to the injunction and which defendants admitted was manufactured under complainants' patent. The invoices of The Speed Check Company, successor company to The Textag Company, show that the majority of all orders filled by the company since the date of the injunction are for these single tags, which were billed as "Speed Check single tags."

The defendant R. M. Goddard, Sr. since the date of the injunction has filled orders for single tags, knowing that those tags were being purchased to replace lost or damaged tags on Textag carriers. He has advertised the single tags and has informed the laundry trade that all his tags could be uesd on the Textag carriers.

The defendant R. M. Goddard, Sr. has since the date of the injunction manufactured, advertised and sold a laundry identification system, known as the Speed Check System. Like the Textag System, the Speed Check System consists of an aluminum board or carrier upon which are mounted groups of fabric tags, the tags each bearing a lot or carrier number corresponding to its particular carrier or board and an additional number corresponding to its particular group upon that carrier or board. In each system the groups are arranged in consecutive ascending numbers across the carrier or board.

There are five notable differences in the Speed Check System and the Textag System. First, in the Speed Check System the tags are arranged in three horizontal rows across the carrier or board, whereas in the Textag System the tags are arranged in one row around the fringe of the carrier or board. Second, the Speed Check System has 36 groups of tags, whereas the Textag System has 22 groups. Third, the Textag System has two groups of tags for single garment orders, the additional indicia of which tags is arranged in consecutive ascending numbers, whereas the Speed Check System has no such groups. Fourth, in the Speed Check System the tags are suspended on the carrier or board by means of tension clips mounted thereon, whereas in the Textag System the tags are suspended by means of rings inserted through holes on the fringe of the board, said rings having a reverted keeper and resembling a shower curtain hook. Lastly, the tags employed in the Speed Check System have numbers on both sides of the tag, whereas the tags employed in the Textag System have numbers on one side only.

The arrangement of the tags and the number of groups on the carrier or board involve only convenience and do not effect or change the system covered by the patent, which does not restrict the patentee to any particular arrangement or number of groups. Since infringement depends upon use of patented features rather than nonuse, it is unimportant that the Speed Check System does not have a group for single garment orders. Any group upon the Speed Check carrier is readily adaptable to a single order group by placing in that group tags with consecutive ascending numbers rather than tags with identical numbers.

The suspending members which hold the groups of tags in their respective places on the carrier or board are important only in that some such means must be provided. The patent does not restrict the patentee to any particular means. The tension clips in the Speed Check System perform the same function as the rings with reverted keeper in the Textag System and they do

so in substantially the same manner and give substantially the same results. The evidence shows that the patentee in 1947 constructed carriers under his patent, then pending, using substantially the same type of tension clip as employed in the Speed Check System and that such carriers were installed in a laundry plant in Atlanta. Continued use of the tension clip was abandoned because of increased costs. It is well-known that a tension clip will perform the same function as the ring with reverted keeper.

The patent clearly describes in its specifications the tag to be used in the system. As described "each tag includes a fabric strip or tape formed with a hem or tunnel within which one side of a safety pin is adapted to be extended" with each tag including a carrier indicia and a group indicia "in the form of one or more numerals which are secured to the tape or strip by stitching or the like, the (carrier indicia) preferably of a color differentiating from the color of the (group indicia)." Both the tags of the Speed Check System and the tags of the Textag System follow these specifications. The specifications do not restrict the patentee to tags with indicia on both sides. The evidence in fact shows that the patentee during 1947 produced under his patent pending several lots of tags with numbers on both sides of the tags, but abandoned the manufacture of such tags, as he did the manufacture of tension clips, because of increased production costs. Numbers on both sides of the tags do not alter or change the system in any respect.

The evidence shows that defendant R. M. Goddard, Sr., through his new company The Speed Check Company solely owned and controlled by him, has wilfully and deliberately violated the injunction of this Court in that he has continued to advertise and sell the single laundry identification tags incorporated in the Textag System and specifically enjoined by this Court, knowing that the tags were to be used on Textag carriers.

The evidence further shows that he has through The Speed Check Company sought to evade and circumvent the patent of complainants by appropriating ideas gained from experimental models of the patentee and thereby effecting changes in the commercial device previously manufactured under the patent and enjoined by the Court.

The Speed Check System performs the same function as the Textag System and the identification system described in the specifications of the patent in the same manner and produces the same results.

The continued sale by R. M. Goddard, Sr. of single laundry identification tags as replacements for Textag carriers and the sale by him of the Speed Check System is causing complainants the loss of a great volume of sales. The advertising and claims of Mr. Goddard that he has a patent pending license and right to make and sell the Speed Check System is causing a majority of all jobbers upon whom complainants depend for sales to adopt a hands-off attitude towards all sales of all laundry identification carriers manufactured under complainants' patent.

The continued infringement by defendants upon the patent rights of complainants has cost them more than a temporary loss of sales and has prejudiced them among the laundry trade to an extent which will be evident for an extended period of time.

Conclusions of Law.

Upon the foregoing findings of fact I make these conclusions of law:

1. It is the groups of tags arranged in consecutive ascending numerical order, each tag of each group bearing its respective carrier and group number, which is protected by the patent and which distinguishes the invention from the prior art.

2. Since the tags are the main inventive element of the system and are fully described in the patent they are protected by the patent irrespective of whether they are separately patented, the tags not being perishable, fragile or intended to be consumed or exhausted in the normal operation of the system.

3. The sale by defendants of individual or lots of cleaning identification tags described in the specifications of complainants' patent infringes upon the patent.

428

4. The placing of numbers or indicia on both sides of the tags does not avoid infringement.

5. The Speed Check System now being manufactured, advertised and sold by defendants is an infringement upon U. S. Patent No. 2,455,007.

6. Complainants are entitled to recover in addition to damages suffered by them as a result of the infringement upon their patent subsequent to the injunction, all their costs in bringing this motion, including a reasonable attorney's fee.

Leman v. Krentler—Arnold Hinge Last Co., 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389; Wadsworth Electric Mfg. Co. v. Westinghouse Electric & Mfg. Co., 6 Cir., 71 F.2d 850; Muellar v. Campbell, D.C., 68 F.Supp. 475, 485; 35 U.S.C.A. § 70, as amended.