**1118**

Annette HEYMAN, Individually, Annette Heyman, as Executrix of the Estate of Lazarus S. Heyman, late of Danbury, and Prudential Management Company, a Connecticut corporation, Plaintiffs,

v.

Robert S. KLINE, Defendant.

In the Matter of Plaintiffs' Application for an Adjudication of Contempt of Court against Mrs. Jeanne KLINE (Wife of Defendant Robert S. Kline), Respondent.

Civ. A. No. B-12.

United States District Court, D. Connecticut.

Jan. 25, 1971.

See also D.C., 344 F.Supp. 1081; 344 F.Supp. 1088; 344 F.Supp. 1110.

Jon O. Newman, Hartford, Conn., for plaintiffs.

S. Hazard Gillespie, of Davis, Polk & Wardwell, New York City, for respondent Jeanne Kline.

William B. Rush, of Pullman, Comley Bradley & Reeves, Bridgeport, Conn., John R. Bush, of MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla., and Harvey B. Oshins, White Plains, N. Y., for defendant Robert S. Kline.

MEMORANDUM OF DECISION UPON CONTEMPT APPLICATION AGAINST RESPONDENT MRS. JEANNE KLINE (WIFE OF DEFENDANT ROBERT S. KLINE)

TIMBERS, Chief Judge.

QUESTION PRESENTED

Plaintiffs' application for an adjudication of contempt of court against the wife of defendant Robert S. Kline, Mrs. Jeanne Kline (hereinafter, "respondent"), presents the legal question whether this Court has jurisdiction over respondent; and the resolution of this legal question turns upon whether respondent is a "nominee" of defendant Kline (hereinafter, "defendant") or a

person "in active concert or participation" with defendant who received "actual notice of [this Court's judgment of September 30, 1970] by personal service or otherwise". Rule 65(d), Fed.R.Civ.P.

For the reasons stated below, the Court holds that the foregoing factual question must be answered in the affirmative; that the Court does have jurisdiction over respondent; and that, subject to further leave granted to respondent to be heard as provided below at p. 1125, plaintiffs' contempt application against respondent should be granted.

## FINDINGS OF FACT

(1) The plenary action out of which the instant contempt proceeding arises was commenced in this Court on February 12, 1970. Plaintiffs (who seek the contempt adjudication in the instant proceeding) sought declaratory and injunctive relief plus damages resulting from defendant's breach of his employment contracts with plaintiffs and defendant's various tortious acts claimed to have been injurious to plaintiffs. After trial on the merits, the Court held, in a written opinion filed June 26, 1970, 344 F.Supp. 1088, that plaintiffs were entitled to (i) a declaratory judgment that defendant had no right, title or interest in certain real property in Tampa, Florida; (ii) a permanent injunction enjoining defendant from interfering with plaintiffs' ownership and development of the Tampa property; (iii) damages (subsequently determined by a Special Master in net amount of $26,860.96); and (iv) reasonable expenses in amount of $3,744.57 incurred by plaintiffs as a result of acts of civil contempt committed by defendant and his Florida attorney (John R. Bush, Esq.) and his White Plains attorney (Harvey B. Oshins, Esq.) in violating this Court's temporary restraining order of February 12, 1970. Defendant's counterclaim was dismissed and his motion for a temporary restraining order or a preliminary injunction was denied.

(2) Earlier in the plenary action and after a full hearing, the Court denied defendant's motion to dismiss the action for lack of in personam jurisdiction and held, in a written opinion filed March 19, 1970, 344 F.Supp. 1081, (i) that defendant was amenable to service of process in Florida under Connecticut's long arm statute; (ii) that application of Connecticut's long arm statute to the instant action did not contravene federal due process requirements; and (iii) that service of process was properly made upon defendant in Florida in accordance with the applicable Connecticut statutes.

(3) On September 30, 1970, a judgment was entered implementing the Court's decision of June 26, 1970. Counsel for the parties were accorded a full opportunity to be heard on the form of this judgment. Paragraphs 3 and 4 of the judgment, which are the injunctive provisions thereof, provide as follows:

"3. Defendant, Robert S. Kline, his agents, servants, attorneys, nominees and persons with whom he is in active concert or participation, be, and they hereby are, permanently enjoined from initiating any legal proceedings, and from making any assertions to any financial institutions, Tampa Mall, Inc., or others, and from making any continuing claims by maintaining documents on the Land Records of Hillsborough County, Florida, in which proceedings, assertions, or claims said Defendant, Robert S. Kline, his agents, servants, attorneys, nominees or persons with whom he is in active concert or participation, claim any right, title or interest in the real property and lease referred to in paragraph 1(a), (b) and (c) of this Judgment, and Defendant, Robert S. Kline, his agents, servants, attorneys, nominees and persons with whom he is in active concert or participation, are also permanently enjoined from filing any document on the land records of Hillsborough County, Florida,

with respect to the real property and lease referred to in paragraph 1(a), (b) and (c) of this Judgment, except for a quit-claim deed in the form and tenor of the quit-claim deed attached hereto.

4. Defendant, Robert S. Kline, within ten (10) days from the date of this Judgment shall cause to be filed on the Land Records of Hillsborough County, Florida, a quit-claim deed in the form and tenor of the quit-claim deed attached hereto, duly executed by himself and his wife Jeanne Kline and properly witnessed and attested."

(4) Respondent is the wife of defendant and lives with him at 14298 Hettrick Circle West, Largo, Florida.

(5) Respondent received actual notice of this Court's judgment of September 30, 1970. She was not named as a defendant in the plenary action and was not served with process therein.

(6) On September 16, 1969, approximately five months prior to commencement of the instant action, defendant had caused the following two documents to be filed on the land records of Hillsborough County, Florida:

(a) Defendant's Xerox copy of an "Assignment of Option" executed by plaintiff Annette Heyman, executrix, on July 16, 1968 (14 months before defendant filed it on the land records) pursuant to which Annette Heyman purported to assign the estate's option dated June 15, 1968 to purchase the Tampa property to four individuals: Annette Heyman, individually (29%); Samuel Heyman (28%); Abigail Heyman (28%); and defendant (15%).

(b) An "Assignment Of Interest In Option Agreement" executed by defendant on August 29, 1969 (approximately three weeks before defendant filed it on the land records) pursuant to which defend-

ant purported to assign to himself and to respondent his 15% interest in the option referred to above.

(7) Defendant testified that he received from respondent no consideration other than a nominal $5.00 payment in return for his assignment to respondent on August 29, 1969 of one-half of his purported 15% interest in the option agreement. He also testified that he transferred the one-half interest to respondent for "a tax reason" and as "a birthday present". But he admitted that no gift tax return was ever filed with respect to this transaction, despite his assertion that his 15% interest was worth up to $1,000,000.

(8) After defendant's alleged transfer on August 29, 1969 of one-half of his purported 15% interest in the option on the Tampa property, he made repeated assertions in judicial proceedings that the 15% interest was his alone and he did not assert that respondent had any bona fide interest therein. Among such judicial admissions are the following:

(a) In his Florida action (Civil Action No. 185138), defendant alleged in paragraphs 15 and 16 of his verified complaint that *he* was the owner of a 15% interest in the Tampa property. A copy of this complaint is on file in this Court, marked as Exhibit C attached to plaintiffs' earlier contempt motion filed herein on February 24, 1970 in connection with defendant's violation of this Court's temporary restraining order of February 12, 1970.

(b) In the instant action (Civil Action No. B–12), defendant alleged in paragraph 15 of his verified counterclaim that *he* "is the equitable owner of a Fifteen percent (15%) interest in the said real estate". The same allegation is reasserted in paragraph 17 of his counterclaim.

(c) Throughout his testimony at the trial on the merits of the instant action, defendant repeatedly and unequivocally testified that *he,* and *he alone,* was the owner of the 15% interest in the Tampa property.

(9) The Court finds upon the entire record, including defendant's judicial admissions herein, that defendant always has asserted that he alone was the owner of an alleged 15% interest in the Tampa property and has demanded that plaintiffs execute a deed conveying such interest to defendant alone; that, until the instant contempt proceedings arose, defendant at no time ever asserted that respondent had any bona fide interest in the Tampa property; that the purported August 29, 1969 assignment by defendant of one-half of his 15% interest in the option on the Tampa property to respondent was not a bona fide arm's length transaction; and that said August 29, 1969 transaction resulted in defendant's designation of respondent as his nominee, pursuant to which respondent, acting in privity with defendant, continues to make a claim of interest in the Tampa property by maintaining documents asserting such claim on the land records of Hillsborough County, Florida.

(10) One of the issues decided by the Court in its opinion of June 26, 1970, after trial on the merits of the plenary action, was that the "Assignment Of Option" executed by Annette Heyman on July 16, 1968 (referred to in paragraph (6) (a) above) never was delivered to defendant and never became effective, defendant having simply helped himself to a copy of the undelivered assignment from the files of the Heyman office while Samuel Heyman was away on military reserve duty. 344 F.Supp. at 1088, 1092–93, 2613–14.

(11) Defendant and respondent having failed to comply with paragraphs 3 and 4 of this Court's judgment of September 30, 1970 despite actual notice thereof having been given to both defendant and respondent, plaintiffs on October 27, 1970 filed a motion requesting the Court to issue an order directing defendant and respondent to show cause why they should not be held in contempt of Court.

(12) On November 4, 1970, the Court issued an order to show cause directing defendant and respondent to show cause on November 16, 1970 why they should not be adjudged in contempt and, if adjudged in contempt, why they should not be punished therefor, in accordance with law, for failure to comply with paragraphs (3) and (4) of the Court's judgment of September 30, 1970; the order to show cause directed both defendant and respondent personally to be present at the hearing before the Court on November 16; and the order to show cause provided for notice of the contempt hearing to be given to defendant and respondent by registered mail.

(13) It is undisputed that both defendant and respondent received actual notice of the November 16 contempt hearing and that each was furnished with copies of the Court's order to show cause of November 4 and supporting papers.

(14) Defendant appeared in person and by counsel at the November 16 contempt hearing. After considerable backing and filling, defendant agreed in open court to execute a quit-claim deed effectively releasing his interest in the option to the Tampa property referred to in paragraph (6) above; thereupon by stipulation the contempt application against defendant was withdrawn; and it was so ordered by the Court.

(15) Respondent, although ordered to do so, did not appear in person at the November 16 contempt hearing. Her counsel did appear specially at the hearing, filed a response to the order to show cause of November 4 and presented oral argument in support of respondent's claim that the Court does not have jurisdiction over respondent.

(16) At the conclusion of the November 16 contempt hearing, the Court re-

served decision on the contempt application against respondent pending receipt of briefs from counsel for plaintiffs and counsel for respondent, which briefs have been received.

(17) At the November 16 contempt hearing, full opportunity was afforded to introduce evidence. Counsel for plaintiffs and counsel for respondent have expressly informed the Court that they do not wish to introduce any further evidence.

## CONCLUSIONS OF LAW

(1) Respondent is a "nominee" of defendant by virtue of the "Assignment Of Interest In Option Agreement" executed by defendant on August 29, 1969.

(2) Respondent is a person "in active concert or participation" with defendant.

(3) Respondent received "actual notice" of this Court's judgment of September 30, 1970.

(4) Respondent, in violation of paragraph 3 of said judgment of September 30, 1970, and while in privity with defendant, has made a continuing claim of interest in the Tampa property by maintaining documents asserting such claim on the land records of Hillsborough County, Florida.

(5) The Court has jurisdiction over respondent for the purpose of enforcing its judgment of September 30, 1970.

(6) Respondent is in contempt of this Court and should be punished for such contempt, subject to the procedure provided for in paragraph 2 of this Court's order of today's date set forth below.

## OPINION

 The essential legal question presented by plaintiffs' contempt application and respondent's response thereto is whether this Court has jurisdiction over a non-party beyond the territorial limits of the District of Connecticut who, while in privity with defendant and acting in concert or participation with him, has been shown to have violated this Court's injunction, of which such non-party has received actual notice.

Respondent argues that the Court lacks jurisdiction to hold her in contempt because she is a Florida resident, she is not a party to the plenary action in which the injunction was issued and she has not been served with process in the plenary action pursuant to Rule 4, Fed. R.Civ.P. Plaintiffs argue that, upon the facts found above, the Court does have jurisdiction over respondent for the purpose of enforcing its injunction by contempt proceedings.

Rule 65(d), Fed.R.Civ.P., specifically provides that an injunction is binding not only upon the parties to the action, but also upon "their officers, agents, servants, employees, and attorneys, *and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.*" (Emphasis added).

The Supreme Court in Regal Knitwear Co. v. NLRB, 324 U.S. 9, 14 (1945), pointed out. the common-law derivation of this precise language of Rule 65(d):

"This is derived from the common-law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control. *In essence it is that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.*" (Emphasis added).

The Court of Appeals for our Circuit, in Stiller v. Hardman, 324 F.2d 626, 628 (2 Cir. 1963), has squarely held that one in privity with a defendant may be pun-

ished for contempt *by the court that issued the injunction,* although the contemnor is not a party and is beyond the territorial jurisdiction of the court that issued the injunction:

"The mandate of an injunction issued by a federal district court runs throughout the United States. Leman v. Krentler-Arnold Co., 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389 (1932). Violation of an injunctive order is cognizable in the court which issued the injunction, regardless of where the violation occurred. Ibid. In the present case, for example, the Ohio district court had power to punish a violative infringement though the infringement took place in New York."

See also United States v. Ross, 302 F.2d 831, 834 (2 Cir. 1962); Alemite Mfg. Corp. v. Staff, 42 F.2d 832 (2 Cir. 1930); McGraw-Edison Company v. Preformed Line Products Company, 362 F.2d 339, 344 (9 Cir. 1966), cert. denied, 385 U.S. 919 (1966); Crane Boom Life Guard Co. v. Saf-T-Boom Corp., 362 F.2d 317, 322 (8 Cir. 1966), cert. denied, 386 U.S. 908 (1967); LeTourneau Co. of Georgia v. NLRB, 150 F.2d 1012 (5 Cir. 1945).

Respondent places chief reliance upon Zenith Corp. v. Hazeltine, 395 U.S. 100 (1969), in urging that the Court lacks jurisdiction to hold respondent as a non-party in contempt of the Court's injunction. The Court does not read *Zenith* as supporting respondent's position; nor does the Court read *Zenith* as restricting the scope of Rule 65(d) as enunciated by the Supreme Court in Regal Knitwear Co. v. NLRB, *supra,* at 14. In *Zenith,* the Supreme Court held that it was error for the district court to have entered an injunction against the parent corporation (Hazeltine) which was not a party to the plenary action. *Zenith* did not involve attempted enforcement of an injunction against a privy of a party defendant upon a showing, as in the instant case, that privity existed. The critical holding in *Zenith,* so far as the issue in the instant case is concerned, is the following:

"Although injunctions issued by federal courts bind not only the parties defendant in a suit, but also those persons 'in active concert or participation with them who receive actual notice of the order by personal service or otherwise,' Fed.Rule Civ.Proc. 65 (d), a nonparty with notice cannot be held in contempt until shown to be in concert or participation. It was error to enter the injunction against Hazeltine, without having made this determination in a proceeding to which Hazeltine was a party." 395 U.S. at 112.

Here, unlike *Zenith,* plaintiffs do not seek a contempt adjudication against respondent as a non-party with notice absent a showing that she is in concert or participation with defendant. Respondent has had, and will continue to have, ample opportunity to show whether she is in concert or participation with defendant. And plaintiffs seek a contempt adjudication against respondent for violation of paragraph 3, not paragraph 4, of the Court's order of September 30, 1970.

The injunction in the instant case was issued in standard form against defendant and those in privity with him, as prescribed by Rule 65(d). Upon the failure of defendant and respondent as his privy to comply with the injunction, the present contempt proceedings were instituted. Upon the basis of the findings of fact set forth above, and subject to additional opportunity being granted to respondent as provided below to refute such findings, the Court has determined that respondent is in privity with defendant and has violated paragraph 3 of the injunction. The procedure followed is believed by the Court to comply with that prescribed by the Supreme Court in Regal Knitwear Co. v. NLRB, *supra,* at 14, and by the Court of Appeals for our Circuit in Stiller v. Hardman, *supra,* at 628.

Upon the present record and in the light of the above authorities, the Court holds that it does have jurisdiction over respondent, although a non-party beyond

the territorial limits of this Court, who has been shown to be within the class of persons defined by Rule 65(d) and to have acted in privity with defendant in violating the Court's injunction.

Finally, since equitable considerations have been urged upon the Court by all parties, the Court is constrained to note that if ever there were a case where the equities overwhelmingly preponderate in favor of plaintiffs, this is the case. For nearly a year, plaintiffs have been attempting to obtain in this lawsuit declaratory and injunctive relief plus damages—relief to which this Court has held plaintiffs are entitled. Every stage of the proceedings, however, unfortunately has been obstructed by conduct on the part of defendant and his Florida counsel which strikes the Court as calculated to subvert the lawful process and adjudication of the Court.

At the very outset, defendant filed a false affidavit, sworn to February 15, 1970, 344 F.Supp. 1088, 1105–06, in which he swore he was in Orlando, Florida, on the night of February 12, 1970, at the time a process server stated in his sworn return of service that he had served defendant personally at his home in Largo, Florida (100 miles from Orlando); when the process server took the witness stand and testified in specific detail regarding his service upon defendant at his home, defendant, although present in the courtroom, sat silently by and did not testify. 344 F.Supp. 1088, 1105–06.

On February 13, 1970—the day after this Court issued a temporary restraining order and after a copy thereof had been served on defendant and had been shown to defendant's Florida counsel— defendant and his Florida counsel filed a lis pendens upon, and initiated a lawsuit asserting a claim on behalf of defendant against, the Tampa property— all in direct defiance of this Court's temporary restraining order. The lis pendens and lawsuit ultimately were withdrawn after the elapse of some five weeks. Upon motion of plaintiffs and after an evidentiary hearing, the Court held defendant and his counsel in civil contempt and awarded plaintiffs $3,744.-57 to reimburse them for their expenses incurred as a result of such contempt. 344 F.Supp. 1088, 1097–99, 1106–08.

Defendant's testimony at the trial on the merits, aside from being in conflict with that of nearly every other witness who testified, added up to a demonstrable lack of credibility on every essential issue in the case. 344 F.Supp. 1088, 1106.

Most recently, defendant persisted for more than six weeks in violating paragraph 3 of the Court's judgment of September 30, 1970. It was not until plaintiffs cited him for contempt and indeed not until the Court bluntly informed him at the November 16 hearing that it was about to punish him for his contempt, that he begrudgingly agreed to bring himself into compliance with the judgment.

In the light of this course of conduct by defendant and his Florida counsel, it would be unrealistic indeed to view respondent's position in the instant contempt proceeding other than as a last ditch effort by defendant and his Florida counsel—this time utilizing defendant's wife as a shield—once again to frustrate the year-long efforts of plaintiffs effectively to secure the relief to which they are entitled.

The Court wishes to make it very clear that nothing stated above is intended even inferentially to reflect upon the professional conduct or competence of *respondent's* counsel in the instant contempt proceedings. His conduct has been exemplary throughout and his competence in oral and written argument has been of great help to the Court.

### ORDER

ORDERED as follows:

(1) That, upon the entire present record before the Court, respondent be, and she hereby is, adjudged in contempt of this Court by reason of her violation of paragraph 3 of the judgment of September 30, 1970.

(2) That a final hearing in the instant contempt proceeding will be held on Tuesday, February 23, 1971, at 2 P.M., in Courtroom No. 1, Room 445, United States Courthouse, 915 Lafayette Boulevard, Bridgeport, Connecticut, for the following purposes:

(a) To afford plaintiffs and respondent a final opportunity to offer any further evidence relevant to any issue in the instant contempt proceeding.

(b) To afford respondent a final opportunity to bring herself into compliance with paragraph 3 of the judgment of September 30, 1970.

(c) To afford respondent an opportunity, in the event she fails to avail herself of the opportunity referred to in paragraph (2)(b) above, to be heard on the matter of punishment to be imposed by reason of her contempt.

(3) That respondent be, and she hereby is, directed personally to be present at the hearing before this Court on February 23, 1971, at the time and place specified in paragraph (1) above.

(4) That the Clerk of this Court is directed to send by registered mail, return receipt requested, to respondent, Mrs. Jeanne Kline, at her home address, 14298 Hettrick Circle West, Largo, Florida, 33540, a copy of this Memorandum of Decision and Order, the mailing of which by the Clerk shall constitute sufficient notice to respondent.

(5) That the Clerk of this Court is further directed to send, by ordinary mail, copies of this Memorandum of Decision and Order to plaintiffs' counsel as follows:

Jon O. Newman, Esq.
60 Washington Street
Hartford, Connecticut 06106

and to respondent's counsel as follows:

S. Hazard Gillespie, Esq.
Davis Polk & Wardwell
1 Chase Manhattan Plaza
New York, N. Y. 10005