URBAN INDUSTRIES, INC. OF KENTUCKY, Etc., Et Al., Plaintiffs-Appellants,

v.

Joan THEVIS, Intervenor-Appellant,

v.

Michael G. THEVIS, Et Al., Defendants-Appellees.

No. 80–7715.

United States Court of Appeals, Eleventh Circuit.

March 15, 1982.

Levine & D'Alessio, Mortin P. Levine, Burgess W. Stone, Atlanta, Ga., for plaintiffs-appellants.

Powell, Goldstein, Frazer & Murphy, Robert M. Travis, Atlanta, Ga., and Ogden, Robertson & Marshall, Wesley P. Adams, Louisville, Ky., for Urban Industries, Inc., et al.

William L. Harper, U. S. Atty., Barbara Harris, Asst. U. S. Atty., Atlanta, Ga., Michael L. Paup, Chief, App. Section, Tax Div., U. S. Dept. of Justice, M. Carr Ferguson, Asst. Atty. Gen., Washington, D. C., for U. S. A.

Brown, Byrd, Blakley & Massey, R. Wayne Byrd, Greenville, S. C., and Cook & Palmour, Summerville, Ga., Joan I. Oppenheimer, Tax Div., U. S. Dept. of Justice, Washington, D. C., for Michael Thevis.

Before GODBOLD, Chief Judge, TJOFLAT and VANCE, Circuit Judges.

VANCE, Circuit Judge:

This appeal involves the relative priority of claims against Michael G. Thevis, a notorious dealer in pornographic materials.[1]

---

1. Thevis has previously been before us on several occasions. We have upheld three convictions for distribution of obscene materials. *See*

*United States v. Thevis,* 526 F.2d 989 (5th Cir.), *cert. denied,* 429 U.S. 928, 97 S.Ct. 335, 50 L.Ed.2d 299 (1976) (Georgia); *United States v.*

We affirm the district court's decision granting priority to the United States.

Prior to December 1974 Thevis lived in Atlanta, Georgia and conducted his extensive business operations from there. In December 1974 he began serving a prison sentence in a federal institution at New Albany, Indiana from which he escaped on April 28, 1978. He remained at large until November 9, 1978 when he was captured by the Federal Bureau of Investigation (F.B.I.) near Hartford, Connecticut. At the time of his capture Thevis had in his possession $411,400 in cash and jewelry which had an estimated value of approximately $1,000,000.

On May 1 plaintiffs obtained a judgment against Thevis in the United States District Court for the Western District of Kentucky in the amount of $681,655.00 plus interest.[2] Thevis appealed the judgment but did not obtain a stay of execution or post a supersedeas bond. On May 3, 1978, while Thevis' appeal was pending in the United States Court of Appeals for the Sixth Circuit, plaintiffs purportedly registered the Kentucky judgment in the Northern District of Georgia pursuant to 28 U.S.C. § 1963 in the hope of levying execution upon any of Thevis' property in that district.

On August 9, 1978 the Internal Revenue Service (I.R.S.) assessed Thevis and Intervenor Velda Joan Thevis, his former wife, for unpaid income taxes, penalties, and interest for the years 1972 through 1975 in the total amount of $5,004,100.96. On August 10, 1978 the I.R.S. filed notices of tax liens for that amount in the clerk's offices of Fulton County, Cobb County, and DeKalb County, Georgia.

The F.B.I. seized the cash and jewelry that Thevis possessed when he was captured. Plaintiffs claimed the property and on November 13, 1978 caused a sheriff's execution to be served on the F.B.I. in Connecticut. On November 14, 1978 the I.R.S. also served the F.B.I. with a notice of levy. The F.B.I. did not turn over the fund to plaintiffs, but transferred it instead to Atlanta, Georgia. On October 26, 1979 plaintiffs filed the present action, seeking a declaratory judgment to the effect that they were entitled to the disputed fund of cash and jewelry.[3] On November 5, 1979 Thevis' former wife, Velda Joan Thevis, intervened in the lawsuit, claiming that the jewelry in question was not properly a part of the disputed fund because she owned it and had only lent it to Thevis.

After trial on December 17 and 18, 1979 the district court found (1) that plaintiffs'

Thevis, 490 F.2d 76 (5th Cir.), cert. denied, 419 U.S. 801, 95 S.Ct. 9, 42 L.Ed.2d 32 (1974) (Louisiana); United States v. Thevis, 484 F.2d 1149 (5th Cir. 1973), cert. denied, 418 U.S. 932, 94 S.Ct. 3222, 41 L.Ed.2d 1170 (1974) (Florida). In addition, this court recently affirmed his conviction under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, and his conviction of conspiring to violate the civil rights of a government witness in violation of 18 U.S.C. § 241. See United States v. Thevis, 665 F.2d 616 (5th Cir. 1982).

2. Urban Indus., Inc. v. Thevis, No. 75–0342–LA (W.D.Ky. May 1, 1978), aff'd, 647 F.2d 166 (6th Cir. 1981), cert. denied, —— U.S. ——, 102 S.Ct. 1013, 71 L.Ed.2d 302 (1982). Although the sixth circuit affirmed the lower court's decision, that affirmance occurred after the dates relevant for this appeal and thus has no bearing on our decision.

3. The district court concluded that it had jurisdiction to hear this claim pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. Federal taxes, however, are explicitly exempted

from section 2201. We need not decide whether this exception applies to suits involving the priority of tax liens, however, because there is an indisputable alternative basis of jurisdiction.

District courts have jurisdiction over any civil action against the United States provided for by section 7426 of the Internal Revenue Code of 1954. See 28 U.S.C. § 1346(e). In turn, section 7426(a) provides this required authorization:

(a) Actions permitted.—
(1) Wrongful levy.—If a levy has been made on property . . . any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary or his delegate.

26 U.S.C. § 7426(a).

registration of the Kentucky judgment in the Northern District of Georgia was invalid because the judgment registered was not then final by appeal; (2) that the I.R.S. perfected its lien on August 10, 1978 by filing notice thereof in the county of Thevis' residence; and (3) that Mrs. Thevis had given the jewelry to Thevis and it was thus properly a part of the disputed fund. On the basis of such holdings the court held that the tax lien was prior to the judgment lien and entered judgment awarding the cash and the proceeds from sale of the jewelry to the I.R.S. Both plaintiffs and Mrs. Thevis appeal, challenging the correctness of the district court's holdings.

Resolution of the conflicting claims of plaintiffs and the I.R.S. is controlled by the traditional "first in time, first in right" principle. *See United States v. City of New Britain*, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954); *Foshee v. Lloyds, New York*, 643 F.2d 1162, 1165 (5th Cir. 1981). The I.R.S. argues that plaintiffs' registration of the Kentucky judgment on May 3, 1978 was invalid. Plaintiffs in turn challenge the validity of the filing of tax lien notice by the I.R.S. Both issues were resolved in favor of the I.R.S. by the district court.[4] These rulings pose the first questions for our consideration. Mrs. Thevis' claim of ownership of the jewelry presents an entirely separate issue.

### (1)

Plaintiffs registered their Kentucky district court judgment in Georgia pursuant to the provisions of 28 U.S.C. § 1963:

A judgment in an action for the recovery of money or property now or hereafter entered in any district court *which has become final by appeal or expiration of time for appeal* may be registered in any other district by filing therein a certified copy of such judgment. A judgment so

registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

(Emphasis added.) The I.R.S. argues that the registration was ineffective because plaintiffs' judgment against Thevis was merely pending on appeal without stay or supersedeas and had not become final by appeal or expiration of time for appeal.

Whether a judgment in such a posture may be registered under this particular statute has been squarely confronted with conflicting results in two prior district court opinions, *Abegglen v. Burnham*, 94 F.Supp. 484 (D.Utah 1950)[5] and *Dorey v. Dorey*, 77 F.R.D. 721 (N.D.Ala.1978). *Abegglen* involved an effort to strike the registration of a judgment obtained in the district court in Idaho and to quash execution issued on the basis of such registration. The Idaho judgment was on appeal without supersedeas. The court held for the judgment debtor stating,

The phrase final by appeal should be given its ordinary, usual, and natural interpretation. The case is still pending until it is disposed of by appeal and the judgment, in any ordinary sense, cannot be regarded as final until that time.

94 F.Supp. at 486. Conversely, the court in *Dorey* held that section 1963 permitted the registration of judgments appealed without stay or supersedeas. The court construed section 1963 *in pari materia* with rule 62 of the Federal Rules of Civil Procedure and concluded that Congress assumed for purposes of section 1963 that appellants would seek a stay or post a supersedeas bond. 77 F.R.D. at 724–25. Thus, unless a judgment was stayed on appeal it was essentially final and could be registered and enforced under section 1963. Further, the court expressed doubts about the constitutionality of section 1963 if construed to prevent the registra-

---

4. *Urban Indus., Inc. v. Thevis*, 81–2 U.S.T.C. ¶ 9565 (N.D.Ga.1980). The Administrator of the Estate of Roger D. Underhill was also allowed to intervene as a party plaintiff. Underhill had previously obtained a default judgment against Thevis. The Administrator did not appeal the adverse judgment of the district court.

5. The result of the *Abegglen* court was also reached in *Kaplan v. Hirsh*, 91 F.R.D. 106 (D.Md.1981); *Goldsmith v. Midwest Energy Co.*, 90 F.R.D. 249 (N.D. Ohio 1980); *Lipton v. Schmertz*, 68 F.R.D. 249 (S.D.N.Y.1974).

tion of these judgments because such a construction would impermissibly discriminate against out-of-district judgment creditors. *Id.* at 725.

We agree with the *Abegglen* decision. As we have said elsewhere, our "starting point in interpreting statutes must be the language of the statutes themselves." *United States v. Anderez,* 661 F.2d 404, 406 (5th Cir. 1981).[6] In this case, the language of section 1963 is unambiguous in requiring that a judgment be final before it may be registered in another judicial district. The statute does not say enforceable judgments, and we see no compelling reason to stretch the plain meaning of the statute by including judgments that may be collectible because no stay was sought or supersedeas bond posted.[7]

■ The concerns about legislative intent and the constitutionality of section 1963 that led the *Dorey* court to its holding overlook the purpose of the registration statute. It was enacted in 1948 to provide a prompt, efficient, and inexpensive means of enforcing final federal judgments. It is, however, an alternative method of enforcement:

> Section 1963 provides a cumulative remedy. It does not prevent a judgment creditor from bringing an independent action on his judgment. And it may be advantageous for him to do this where the original judgment is not registerable due to the fact that it has not become final by appeal or expiration of the time for appeal.

7B J. Moore, Moore's Federal Practice § 1963 (2d ed. 1981). *See Meridian Investing & Development Corp. v. Suncoast Highland Corp.,* 628 F.2d 370, 373 (5th Cir. 1980); *Slade v. Dickinson,* 82 F.Supp. 416, 418

(W.D.Mich.1949). A judgment creditor is free to pursue an independent action to collect his judgment in a different jurisdiction. That independent action option is available even during the pendency of an appeal if the judgment is not superseded or stayed. The new, streamlined procedure provided by section 1963 is an added option that is meant to be available only after the judgment becomes final, in large part because it is a summary procedure which does not accord the judgment debtor the same right to advance defensive matter as does an independent action. The constitutional objections to this construction of section 1963 are no stronger than those based on legislative intent. The requirement of finality is clearly reasonable and rationally related to the purpose of making nonappealable judgments easily enforceable. *Cf. Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (rational basis standard applies to equal protection challenges to economic legislation).

The district court correctly held that it was constrained to apply the plain meaning of section 1963. The judgment of the court in Kentucky was not final by appeal, and it was improperly registered in the Northern District of Georgia. Such purported registration was without force and effect.

### (2)

■ In light of our determination that the Kentucky registration was invalid, the I.R.S. gained priority over the plaintiffs if it properly recorded its lien for back taxes in August 1978. We agree with the district court that the I.R.S. perfected its lien on August 10, 1978 and that its claim has priority over that of the plaintiff judgment creditors.

6. The eleventh circuit has adopted as binding precedent the pre-October 1, 1981 case law of the fifth circuit. *See Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1207 (11th Cir. 1981).

7. Although this court has not squarely met the present question the fifth circuit has at least twice cited *Abegglen* with approval. *See Olympic Ins. Co. v. H. D. Harrison, Inc.,* 413 F.2d 973, 974 (5th Cir. 1969) ("Even though the judgment below is not superseded, the plaintiff-appellee probably cannot execute its substan-

tial judgment outside the Eastern District of Louisiana until it becomes final"). *Gulf & So. Transp. Co. v. Jordan,* 257 F.2d 361, 363 (5th Cir. 1958) ("notwithstanding appellants' failure to supersede either judgment, appellee has not been able to make collection or to register the judgments [i]n other districts pursuant to 28 U.S.C.A. § 1963"). The court has reached the same result in dictum. *See Bros., Inc. v. W.'E. Grace Mfg. Co.,* 261 F.2d 428, 433 n.4 (5th Cir. 1958).

The question whether the I.R.S. perfected its tax lien and thus gained priority against the fund in August is governed by 26 U.S.C. § 6323(f).[8] That statute states that for a tax lien to be effective with respect to personal property, it must be filed at the taxpayer's place of residence. The effectiveness of the lien in this case depends on a finding that Thevis' place of residence on August 10, 1978, the date of filing, was either in Fulton, Cobb, or DeKalb County, Georgia. It is undisputed that Thevis was a resident of Fulton County, Georgia for more than twenty years prior to December 1974 when he reported to federal prison. From then until April 28, 1978 he remained in prison and as a matter of law retained his Georgia residence. *See Ellingburg v. Connett,* 457 F.2d 240, 241 (5th Cir. 1972); *Brimer v. Levi,* 555 F.2d 656, 657–58 (8th Cir. 1977); *Kahane v. Carlson,* 527 F.2d 492, 494 (2d Cir. 1975); *Cohen v. United States,* 297 F.2d 760, 774 (9th Cir.), *cert. denied,* 369 U.S. 865, 82 S.Ct. 1029, 8 L.Ed.2d 84 (1962).

Plaintiffs urge that the district court improperly applied a presumption that Thevis' pre-incarceration residence remained his residence during the pendency of his escape. They argue that while there may be a presumption that a defendant retains his domicile until released, residence cannot be presumed. Indeed, they argue that it is possible to have no residence and that Thevis had no residence for purposes of section 6323(f) during the period of his escape. In *Corwin Consultants, Inc. v. Interpublic Group of Companies, Inc.,* 512 F.2d 605 (2d Cir. 1975), however, the court noted that drafters of the 1966 Tax Lien Act chose residence rather than domicile as the place for filing "to ease the burden for creditors in searching for federal tax liens and for

the IRS in filing notices of such liens." 512 F.2d at 610. The court noted that a person can have more than one residence but only one domicile.[9] The thrust of plaintiffs' argument, however, would frustrate the deliberate choice of Congress to allow easier filing of tax liens. We need not decide this issue, however. Perhaps we could conceive of situations where the distinctions between domicile and residence would be controlling with respect to the validity of a notice of tax lien, but we do not think that this is such a case. Thevis denied that he was a resident of Atlanta during the six months that he was an escapee. Until the time of his escape, however, he had executed trust agreements, assignments, notes, and other documents listing Atlanta as his residence. He stated at his parole hearing that his plans were to return to Atlanta where his wife and children were located. Finally, he testified that he had spent more time in Atlanta than anywhere else while he was a fugitive. The district court made a finding of fact that on August 10, 1978 Thevis was a resident of Atlanta, Fulton County, Georgia, the place where the notice of tax lien was filed on that date. The finding of the district court is not clearly erroneous.

(3)

■ The final issue before us concerns the ownership of the seized jewelry and whether it was properly a part of the fund claimed by the I.R.S. and plaintiffs. Thevis had originally given the jewelry in question to his wife. During 1976 she delivered it back to him for his use in raising needed money, ostensibly to pay the legal fees in his criminal cases.[10] In May 1978 the parties were divorced. A detailed, fourteen-page property agreement was signed, but

---

**8.** 26 U.S.C. § 6323(f)(1)(A)(ii) provides that the place for filing of the notice shall be:

Personal property.—In the case of personal property, whether tangible or intangible, in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which the property subject to the lien is situated . . .

and section 6323(f)(2)(B) provides that for purposes of the above paragraph property shall be deemed situated as follows:

Personal property.—In the case of personal property, whether tangible or intangible, at the residence of the taxpayer at the time the notice of lien is filed.

**9.** The fifth circuit has previously held that filing a notice of lien in the county of taxpayer's domicile was sufficient to perfect the lien against personalty. *Grand Prarie State Bank v. United States,* 206 F.2d 217, 219 (5th Cir. 1953).

**10.** *See supra* note 1.

no mention was made of any obligation on Thevis' part to return the jewelry. To the contrary, the agreement contains a waiver by each party of claims against the other. The trial judge found that when Mrs. Thevis returned the jewelry to Thevis she intended to give it to him. From our review of the record we conclude that the finding was not clearly erroneous.

AFFIRMED.