**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ANITA'S NEW MEXICO STYLE
MEXICAN FOOD, INCORPORATED,
Plaintiff-Appellee,

v.

ANITA'S MEXICAN FOODS
CORPORATION,                                        No. 97-1942
Defendant-Appellant,

and

QUEEN INTERNATIONAL FOODS,
INCORPORATED,
Defendant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-97-510-A)

Argued: December 3, 1997

Decided: January 7, 2000

Before WIDENER, Circuit Judge, HAMILTON, Senior Circuit
Judge, and James H. MICHAEL, Jr., Senior United States District
Judge for the Western District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Widener wrote the opinion, in
which Senior Judge Hamilton and Senior Judge Michael concurred.

_____

**COUNSEL**

**ARGUED:** Thomas Joseph Moore, BACON & THOMAS, Alexandria, Virginia, for Appellant. Mark Peyser Friedlander, Jr., FRIEDLANDER & FRIEDLANDER, P.C., Arlington, Virginia, for Appellee.

_____

**OPINION**

WIDENER, Circuit Judge:

This case arises from an alleged breach of a stipulated judgment previously entered in a case of a trademark appeal between Anita's New Mexican Style Mexican Food, Inc. (Anita's Virginia) and Anita's Mexican Foods Corp. (Anita's California) in the United States District Court for the Central District of California. Anita's California contends that the United States District Court for the Eastern District of Virginia erred in denying its motion to dismiss by holding that the district court had jurisdiction over the case and that the complaint stated a claim upon which relief could be granted. In addition, it appeals the district court's entry of an injunction that is duplicative of the injunction entered by the United States District Court for the Central District of California. We affirm.

I.

When reviewing a district court's denial of a motion to dismiss, we consider that the facts alleged in the complaint are true, McNair v. Lend Lease Trucks, Inc., 95 F.3d 325, 327 (4th Cir. 1996), and we construe the allegations in the light most favorable to the pleader. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

In 1987, after an adversarial hearing, the United States Patent and Trademark Office decided that Anita's California had superior rights to the trademark ANITA's. Anita's Virginia appealed this decision in the United States District Court for the Central District of California pursuant to 15 U.S.C. § 1071(b). The parties settled that civil action by entering a detailed stipulated judgment which was entered as an

2

order by that district court on October 17, 1988. Relevant for our purposes, the stipulated judgment prohibited Anita's California from selling prepared Mexican food products under the trademark ANITA's outside of California. Furthermore, Anita's California agreed that it would ensure compliance of its licensee, Queen International Foods, Inc. (Queen International), and any other future licensee, with the terms of that judgment. Anita's California agreed in the stipulated judgment that it "controls the nature and quality of the goods and services sold in association with any trade name, trademark or service mark comprising ANITA'S, by Queen International Foods, Inc."

In December 1996, Anita's Virginia discovered that prepared Mexican food products, under the trademark ANITA'S, labeled "Manufactured by Queen International Foods, Monterey Park, CA," were being sold in Virginia. On December 20, 1996, Anita's Virginia sent a letter to Anita's California requesting immediate compliance with the stipulated judgment. Anita's California subsequently terminated its license of the ANITA's trademark to Queen International in a February 11, 1997 letter. Anita's California then advised Anita's Virginia of this termination on February 12, 1997.

On April 9, 1997, Anita's Virginia filed a civil action against Anita's California and Queen International in the district court for the Eastern District of Virginia, alleging that both defendants were in breach of the order of the district court for the Central District of California and the Stipulated Judgment. Anita's Virginia, in that suit, requested a preliminary injunction, and Anita's California filed a motion to dismiss, on which the court held a hearing. The court heard the motion on May 23, 1997. Queen International defaulted, and the court continued the case against it pending a hearing on the issue of damages.* In a June 10, 1997 order, the court denied the motion to dismiss and granted the preliminary injunction, from which order Anita's California appeals.

II.

Anita's California first challenges the district court's jurisdiction.

_____

*Queen International is not a party to this appeal.

3

Whether the district court had subject matter jurisdiction is a question of law that we review de novo. Jordahl v. Democratic Party of Virginia, 122 F.3d 192, 197 (4th Cir. 1997). We review the district court's finding of personal jurisdiction de novo , while reviewing the district court's findings of fact for clear error. Young v. F.D.I.C., 103 F.3d 1180, 1190 (4th Cir. 1997).

A.

Considering subject matter jurisdiction first, we observe that the parties do not dispute that they are completely diverse and that the amount in controversy is satisfied. Accordingly, this case is squarely within the language of 28 U.S.C. § 1332 (1997). Nevertheless, Anita's California contends that the district court lacks subject matter jurisdiction because the United States District Court for the Central District of California has exclusive jurisdiction to remedy any viola-tion of the stipulated judgment. We disagree.

It is widely accepted that institution of a second action on a judg-ment is a valid method of enforcing that judgment. See In re Profes-sional Air Traffic Controllers Org. (PATCO), 699 F.2d 539, 544 (D.C. Cir. 1983); Urban Indus., Inc. of Kentucky v. Thevis, 670 F.2d 981, 985 (11th Cir. 1982); Stiller v. Hardman , 324 F.2d 626, 628 (2d Cir. 1963); 18 Moore's Federal Practice 3d § 130.33 (1997). More-over, the second action does not have to be filed in the same district court that rendered the judgment in the first action. Therefore, the dis-trict court that rendered the judgment in the first action does not have exclusive jurisdiction over the enforcement of that judgment. If the district court hearing the second action has subject matter and per-sonal jurisdiction, the action is properly before the second court. The only instance in which a subject matter jurisdiction problem arises in the second action is where the first action was based on federal ques-tion jurisdiction. See Stiller, 324 F.2d at 628 (discussing problem of second action jurisdiction when first action based on federal question jurisdiction); 18 James Wm. Moore, et al., Moore's Federal Practice, § 130.33 (3d 1997) ("[I]f the judgment sought to be enforced was from an action in which federal question jurisdiction was the basis of federal court jurisdiction, an action solely to enforce the judgment would lack the federal question jurisdiction and therefore could not be maintained in federal court."). In the present case, the problem that

4

arises when the first action is based on federal question jurisdiction is not present because in the case at hand there is diversity jurisdiction for the instant case filed in the Eastern District of Virginia. Therefore, the district court in the present case had subject matter diversity of citizenship jurisdiction.

B.

Turning to personal jurisdiction, a district court sitting in diversity utilizes a dual analysis when jurisdiction is sought through a long-arm statute. World-Wide Volkswagen v. Woodson, 444 U.S. 286, 290 (1980). First, the court must determine whether the defendant falls within the meaning of the statute involved. Peanut Corp. of Am. v. Hollywood Brands, Inc., 696 F.2d 311, 313 (4th Cir. 1982). If so, the district court must determine that its exercise of jurisdiction does not overstep the bounds of the Constitution. Peanut Corp., 696 F.2d at 313.

The Virginia long-arm statute provides jurisdiction over any person who acts directly or by agent as to a cause of action arising from business activity transacted in the State. Va. Code§ 8.01-328.1(A)(1) (Michie 1992). The Virginia Supreme Court has interpreted the statute to require only a single transaction in Virginia. Kolbe, Inc. v. Chromodern Chair Co., 180 S.E.2d 664, 667 (Va. 1971). In the present case, we conclude Queen International was an agent of Anita's California under the terms of the STIPULATED JUDGMENT. Consequently, the multiple transactions of selling Mexican food products in Virginia fulfills the requirements of Virginia's long-arm statute that the defendant be "transacting any business in this Commonwealth." Va. Code § 8.01-328.1(A)(1) (Michie 1992).

Under the law of agency in Virginia, the power of control is ordinarily a determinative factor in ascertaining the alleged agent's status. Texas Co. v. Zeigler, 14 S.E.2d 704, 706 (Va. 1941). The Supreme Court of Virginia, in a context similar to that present here, examined whether a principal-agent relationship existed under Va. Code § 8.01-328.1 in Kolbe, Inc. v. Chromodern Chair Co., 180 S.E.2d 664, 667 (Va. 1971). In determining whether a company fell within the reach of the long-arm statute, the court held that an agency relationship exists when the agent acts "under the authority and direction of" the

5

principal. <u>Kolbe</u>, 180 S.E.2d at 667. Thus, the court held that the manufacturer fell within the long-arm statute when a manufacturer's local representative, acting under the authority and direction of the company, secured the signature of a distributor in Virginia. <u>Kolbe</u>, 180 S.E.2d at 667. In denying Anita's California's motion to dismiss, the district court in the case before us implicitly found that Anita's California acted in Virginia. Queen International sold Mexican food products in Virginia under the authority and direction of Anita's California. Queen International was the production facility for the foods sold by Anita's California. In the stipulated judgment, Anita's California admits that Queen International is its trademark licensee and that it controlled the goods sold by Queen International under the ANITA'S trademark. In light of the evidence that Queen International acted under the authority and direction of Anita's California, the district court properly held that Anita's California fell within the reach of Va. Code § 8.01-328.1(A)(1).

Finding that Anita's California falls within the meaning of the Virginia long-arm statute, we now consider whether the jurisdictional requirements of the United States Constitution also are met. We note from the outset that the requirements of the Due Process Clause may be more stringent than those of the Virginia statute. See <u>Peanut Corp.</u>, 696 F.2d at 313.

Personal jurisdiction is an offspring of due process and protects a defendant from being subject to <u>in personam</u> judgments in a forum with which it lacks meaningful contacts. <u>Chung v. NANA Development Corp.</u>, 783 F.2d 1124, 1126 (4th Cir. 1986) (citations omitted). <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316-17 (1945), requires certain minimum contacts before a defendant is subject to the jurisdiction of a forum in which it is not physically present so that jurisdiction does not violate "traditional notions of fair play and substantial justice." These contacts with the forum must be such "as to make it reasonable . . . to require the corporation to defend the particular suit which is brought there." <u>International Shoe</u>, 326 U.S. at 316-17.

In order for the contacts to be sufficient for jurisdiction, "there [must] be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus

6

invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). Indeed, "the defendant's conduct and connection with the forum State [must be] . . . such that [it] should reasonably anticipate being haled into court there." World-Wide Volkswagen, 444 U.S. at 297.

In the case before us, Anita's California had contacts with the forum state, Virginia, sufficient to fulfill the constitutional requirements for personal jurisdiction. Anita's California contends that it lacks sufficient contacts with the forum because it has no office in Virginia, has no sales representatives in Virginia and does not ship products in Virginia. Anita's California, however, sold Mexican food products in Virginia through its licensee Queen International in violation of the stipulated judgment. As previously mentioned, Anita's California represented in the stipulated judgment that Queen International was its licensee and that it would ensure Queen International's compliance with the stipulated judgment. Anita's California utilized Queen International to place its goods in the stream of commerce so that the goods would be purchased in Virginia in violation of the geographic provisions of the stipulated judgment. These sales were purposeful and availed Anita's California of the benefits of doing business in Virginia under Virginia law. Consequently, it was reasonable for Anita's California to reasonably anticipate being haled into court in Virginia so that the district court's exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. We thus conclude that the service of process was valid.

III.

Anita's California further alleges that the district court violated federal trademark law by exercising jurisdiction in this case. Specifically, it claims that, pursuant to 15 U.S.C. § 1071, Anita's Virginia, as a losing party before the Trademark Trial and Appeal Board of the United States Patent and Trademark Office, must file its claim in the federal court for the forum in which the defendant resides. Section 1071 of Title 15 does not apply by its own terms. That section applies to appeals of decisions from the Trademark Trial and Appeal Board. 15 U.S.C. § 1071 (1997). Anita's Virginia complied with this statute when, in 1987, it exercised its option and appealed the Trademark Trial and Appeal Board to the United States District Court for the

7

Central District of California, the action that resulted in the stipulated judgment at issue in the present case. Thus, the present action is not an appeal of decision from the Trademark Trial and Appeal Board, and a sought-for prohibition under 15 U.S.C. § 1071 is not well taken.

IV.

Anita's California also challenges the district court's denial of its F.R.C.P. 12 (b)(6) motion for failure to state a claim upon which relief can be granted. The district court, it alleges, implicitly held that the stipulated judgment was a contract when it permitted Anita's Virginia to maintain its action because the only cause of action in the complaint was for breach of contract. We review de novo the district court's decision to deny a motion to dismiss for failure to state claim upon which relief may be granted. Flood v. New Hanover County, 125 F.3d 249, 251 (4th Cir. 1997).

In United States v. Armour & Co., 402 U.S. 673 (1971), and United States v. ITT Continental Baking Co., 420 U.S. 223 (1975), the Supreme Court indicated that rules of contract construction applied when determining the scope of a consent decree. Thus, the Court reasoned in ITT Continental Baking Co., "since consent decrees and orders have many of the attributes of ordinary contracts, they should be construed basically as contracts . . . ." 420 U.S. at 236-37. Because a stipulated judgment is analogous to a consent order or decree, it is also treated as a contract for the purposes of enforcement sought here. Therefore, the district court properly denied Anita's California's 12(b)(6) motion because Anita's Virginia correctly plead its enforcement action as a breach of contract.

At this point, we should add that the action brought by Anita's Virginia in this case is not different from the action of debt on a judgment, whether so designated for the purpose of describing the nature of the action or the purposes of diversity jurisdiction. See T. Munford Boyd & William W. Koontz, Burk's Pleading and Practice § 77 (4th ed. 1952); 4 Minor's Institute, pt. I, at 631 (2d ed. 1883). So whether the matter should be treated as one which the courts would treat as a violation of a contract in a common law cause of action of assumpsit, or whether the matter should be treated as one which the courts

8

would treat as a cause of action of debt on a judgment, the district court had diversity jurisdiction.

V.

Finally, Anita's California claims that the district court erred by entering its injunction which duplicates the order entered by the United States District Court for the Central District of California. The argument apparently is that because the order of the court in the Central District of California could be enforced against this defendant for a violation of the injunction without reference to where the violation took place, see Leamon v. Krentler-Arnold Co. , 284 U.S. 448 (1932), that implies an implicit limitation of the power of a federal court to enforce the injunction elsewhere.

We think this position is not well taken. In the first place, Leamon does not so hold. That case does not speak to the enforcement of an injunction by separate suit as here. In this respect, we note that even 28 U.S.C. § 1963, providing for the registration of judgments in other federal courts than the court which entered the judgment, does not prevent an action in the nature of debt on a judgment to enforce the judgment first entered. See In Re Professional Air Traffic Controllers Org., 699 F.2d 539, 544 (D.C. Cir. 1983); Urban Indus., Inc. of Kentucky v. Thevis, 670 F.2d 981, 985 (11th Cir. 1982); Meridian Investment and Development Corp. v. Suncoast Highlands Corp., 628 F.2d 370, 373 n.5 (5th Cir. 1980); 18 James Wm. Moore, et al., Moore's Federal Practice, § 130.33 (3d ed. 1999).

The fact that it has been held in Stiller that merely recording a judgment under 28 U.S.C. § 1963 does not of itself authorize injunctive relief in the district in which the earlier judgment is recorded under that statute, see 11 Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 2787 (2d ed. 1995), does not prohibit the bringing of a separate suit, as here, to enforce the earlier judgment of another federal court. Here, Anita's Virginia does not proceed under 28 U.S.C. § 1963. In the case at hand, a separate suit was filed under the diversity jurisdiction to enforce the stipulated judgment of the Central District Court of California. The papers were executed with formality that would have pleased Sir Edward Coke, and we are of opinion the case should be allowed to proceed.

9

The order of the district court appealed from is accordingly

AFFIRMED.

10