T.C. Memo. 2003-345

UNITED STATES TAX COURT

LOUIS FUSARO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13282-01L.            Filed December 29, 2003.

<u>Willard D. Horwich</u>, for petitioner.

<u>Irene S. Carroll</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  The petition in this case was filed in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination).  The issue for decision is whether respondent may levy on petitioner's pension to collect a tax liability owed by petitioner for 1990 through 1994.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference.  At the time the petition in this case was filed, petitioner resided in Los Angeles, California.

Petitioner's Residence(s)

On January 12, 1995, petitioner was divorced from his former wife, Kathleen Fusaro.  During all of 1996, petitioner maintained a residential address in Hallandale (Hallandale), Broward County, Florida.  While residing in Hallandale, he lived with Kelli Jo Tackett (Tackett) and their child.  Petitioner and Tackett shared the expenses of the residence, but he paid the majority of the expenses.  Throughout 1996 and through the time of trial in January 2003, petitioner continued to use his Florida driver's license with a Florida address.  At the time of trial, petitioner did not have a permanent California driver's license.

From April 12 through July 23, 1996, and from August 22 through December 20, 1996, petitioner's statements from his personal checking account with First Union Bank showed petitioner's address in Hallandale.  The statements showed purchases and withdrawals in both California and Florida throughout the period covered by the statements, including many

in Florida throughout October, November, and December 1996.  From May 15 through September 30, 1996, petitioner had a personal savings account with First Union Bank.  The savings account statements showed petitioner's address in Hallandale.  Petitioner conducted banking transactions in his savings account in both Florida and California throughout the months covered by the statements, with the last transaction in Florida occurring on August 5, 1996.  At the time of trial, petitioner continued to use a Florida address on his checks.

Employment with Warner Bros. Television Productions

In 1995 and early 1996, petitioner was employed by Warner Bros. Television Productions (Warner Bros.) filming a pilot television program in Seattle, Washington.  A Warner Bros. employee suggested to petitioner that he move from Florida to California to facilitate his hiring by Warner Bros. in California because production companies are required to pay higher "distant location" rates for an out-of-State director under the Director's Guild of America contract.  On July 10, 1996, petitioner executed documents with Warner Bros. concerning his work for the television program "The Drew Carey Show".  A "Film DGA Deal Memo" (deal memo) listed petitioner's weekly salary with a guaranty of work for 1 week as a unit production manager.  Petitioner also did business with Warner Bros. under the name Jigsaw Productions, Inc. (Jigsaw).  Petitioner's and Jigsaw's address as listed in

the deal memo was in Marina Del Ray, California. An "On-Production Loan-Out" was also signed, showing Jigsaw of Hallandale, Florida, as the lender and petitioner as the debtor, with an address in Marina Del Ray. The "loan-out" corporation (i.e., Jigsaw) was used by petitioner, in his own words, as "a device for getting payroll, so that the money comes, flows into the corporation, and then it flows back to me as pay, as salary, and it was just a device for tax planning." Jigsaw did not register as a corporation with the State of California.

In June 1996, petitioner was living on a friend's boat in Marina Del Ray. He then moved into a friend's mother's apartment in California. In October 1997, he moved to Hillcrest Road in Los Angeles.

Notice of Federal Tax Lien

Assessments were made against petitioner for Federal income tax for 1990, 1991, 1992, 1993, and 1994. The validity of the original assessment of tax for those years is not an issue in this case. On July 25, 1996, the Internal Revenue Service (IRS) filed two Forms 668, Notice of Federal Tax Lien, relating to petitioner's unpaid tax liability for 1990 in the amount of $61,864.24 and for 1992, 1993, and 1994 in the amounts of $4,493.53, $25,115.01, and $22,374.19, respectively. On September 25, 1996, the IRS filed Form 668 relating to petitioner's liability for 1991 in the amount of $62,039.42. All

of the tax liens were filed with the Broward County Circuit Court in Fort Lauderdale, Florida (Broward County).

Federal Tax Returns

Petitioner's business affairs and his tax returns were handled by David Simon (Simon), a certified public accountant, in Florida. Simon was petitioner's business manager beginning in the early 1990's.

Simon prepared Forms 4868, Application for Automatic Extension of Time to File a U.S. Individual Income Tax Return, for 1995 and 1996 showing petitioner's address in Hallandale. On September 19, 1997, petitioner filed his Form 1040, U.S. Individual Income Tax Return, for 1995. Petitioner attached two Forms W-2, Wage and Tax Statement, to the Form 1040. The Form 1040 and the two Forms W-2 showed petitioner's address in Hallandale. On November 3, 1997, petitioner filed his Form 1040 for 1996, with attached Forms W-2. The Form 1040 and the Forms W-2 all listed the same Hallandale address.

Petitioner did not file a California Resident Income Tax Return for any year prior to 1999.

Pension Plan

At the time of trial, petitioner was a production manager in California. He had been employed in the film and television business for 30 years. For all years relevant to this proceeding, petitioner participated in a basic and a supplemental

pension plan provided by the Director's Guild of America - Producer Pension Plan (pension plan).  The basic plan was a defined benefit plan, and the supplemental plan was a defined contribution plan.

On July 19, 2000, petitioner was fully vested in both the supplemental plan and the basic plan.  On June 30, 2000, his account balance in the supplemental plan was $249,053.10.  As of July 19, 2000, under the basic plan, petitioner's payment that he would receive at age 65 was $3,811.29 per month, payable as a single-life annuity.  As of July 19, 2000, petitioner's early retirement benefit under the basic plan includes the payment that he would receive at age 55.  Petitioner's payment would be $2,667.90 per month, payable as a single-life annuity.

Bankruptcy Proceeding

On July 19, 2000, petitioner filed a voluntary petition under chapter 7 of the U.S. Bankruptcy Code with the U.S. Bankruptcy Court for the Central District of California in Los Angeles, California.  Petitioner's address on the bankruptcy petition was in Hollywood, California.  At the time he filed the bankruptcy petition, petitioner represented that the market value of the pension plan was $241,928.69, of which $64,068.58 was claimed by his former spouse.  Petitioner claimed his pension plan as exempt property in the bankruptcy proceedings.  No objection was made to petitioner's claim that the pension plan

was exempt property, and petitioner's interest in the pension plan was not treated as an asset in the bankruptcy case. On October 30, 2000, petitioner received a discharge in bankruptcy.

Appeals Office Hearing

On November 30, 2000, the Commissioner mailed to petitioner a Final Notice - Notice of Intent to Levy and Notice of Your Right to a Hearing (notice of levy). The notice of levy was mailed to petitioner at an address in Los Angeles, California. Petitioner timely filed a Form 12153, Request for a Collection Due Process Hearing (hearing). In the request, petitioner challenged the notice of levy stating:

> The taxpayer filed a chapter 7 bankruptcy petition on July 19, 2000 * * * taxpayer received a discharge on October 30, 2000. The federal tax lien recorded in Florida in 1996 may not now be used to levy on Mr. Fusaro's property. * * *

Petitioner's request for hearing was assigned to Appeals Officer William Hsieh (Hsieh). Prior to the hearing, on February 16, 2001, petitioner's representative, who was also his bankruptcy attorney, Wesley H. Avery (Avery), mailed a letter to Hsieh describing petitioner's position as follows:

> In order to have a perfected security interest in the Pension Plan, prepetition the IRS would have had to file a Notice of Tax Lien in the one office within the state, as designated by the laws of such state, in which the property subject to the lien is situated. * * * Under California law, which is the situs of the Pension Plan, it was necessary for the IRS to file prepetition a Notice of Federal Tax Lien with the California Secretary of State. * * * However, the IRS failed to file prepetition a federal tax lien against

Mr. Fusaro with the Secretary of State in California, or indeed anywhere in California.

Attached to the letter was a copy of the bankruptcy petition and a printout of the liens that Avery obtained from either Westlaw or Lexis.

Around February 28, 2001, Hsieh met with Avery. Hsieh understood that there was an issue regarding the validity of the tax liens. Hsieh examined the tax liens that had been filed in Florida and did not ask any questions about them. Hsieh also reviewed the cases that Avery provided regarding petitioner's position and conducted his own independent research. To verify assessments, Hsieh reviewed petitioner's case file; the Forms 4340, Certificate of Assessments, Payments, and Other Specified Matters; and the internal IRS transcripts. During the hearing, Avery did not raise the issue of petitioner's residence in 1996.

At the conclusion of the hearing, Hsieh sustained the IRS's right to proceed to levy on exempt assets that petitioner owned prior to his bankruptcy discharge, and the Commissioner issued the notice of determination. Hsieh found in pertinent part as follows:

> In this case the Collection employee has provided verification that all statutory, regulatory and administrative requirements have been met before the levy action was proposed. * * * The taxpayer's attorney claimed that the chapter 7 personal bankruptcy discharged all tax liabilities of the taxpayer on October 30, 2000, and the Service did not perfect the

> NFTL [Notice of Federal Tax Lien] in California. The Service's position is that the NFTL filed prior to the bankruptcy is still enforceable against exempt assets in a chapter 7 bankruptcy. * * * The taxpayer's attorney's primary position is that the NFTL's filed by the Service have not been perfected to be enforceable against the interest in the Pension Plan located in California. His understanding is that under California law, which is where the pension plan is located, it was necessary for the service to file prepetition a Notice of Federal Tax Lien with the California [Secretary] of State.

Hsieh also noted that there were unpaid assessments of tax liabilities, that the assessments were made within the period of limitations, and that notice and demand for payment were made and there was a neglect or refusal to pay.

In the petition in this case, filed November 9, 2001, petitioner alleged that he was a resident of Florida during 1991, 1992, 1993, 1994, and at the time petitioner's income tax returns were filed for those years. The petition alleged that petitioner resided in California at the time that the petition was filed, but was silent as to other time periods. In support of the allegations that respondent's liens were not valid because they had not been filed in California, the petition alleged:

> (f) At all times material herein, Petitioner has been, and now is, a member of a pension plan set up by the Director's Guild of America - Producer. From prior to 1996, to the present time, the administrative offices of said plan have been, and now are, located in Los Angeles, California. The plan is administered in Los Angeles, California. All of the activities of said plan are carried on in the City of Los Angeles, except to the extent that any members of the plan may be a resident outside of the City of Los Angeles.

On March 13, 2002, the Court received from respondent a Motion for Judgment on the Pleadings, which was recharacterized as a Motion for Summary Judgement and filed on that date.  In that motion, respondent pointed out that the pension plan was personal property of the taxpayer and:

> 11.  The situs of personal property is where the person resides not where the bank account, stock account or certificate, paintings or administrator of a pension fund is located.  26 U.S.C. sec. 6323(f)(2)(B) provides that personal property, whether tangible or intangible, is situated at the residence of the taxpayer at the time the notice of lien is filed.

In opposition to respondent's motion, petitioner asserted:

> Section 6323(f)(2) provides that in the case of personal property, the residence of the taxpayer at the time the notice is filed is deemed to be the location of the personal property.

> These statutes raise the issue of whether the Petitioner was a resident of Broward County on July 25, 1996.

> Thus, there are two significant issues which need to be determined before summary judgment can be granted to Respondent.  The first is whether the filing in Broward County Court was a proper filing and the second is whether the Petitioner was a resident of that county on July 25, 1996.

> There is, of course, the issue as to what property would a properly filed Notice of Federal Tax Lien attach.  What would be the dollar amount of the Pension Plan to which a lien would attach?  For this, recourse must be had to appropriate law, whether federal or state, which is non-bankruptcy law.

Attached to petitioner's objection to respondent's motion was an affidavit of petitioner dated April 10, 2002, in which he stated that he first rented an apartment in California in August 1995,

that he intended to become a permanent resident in California when he was hired for a television show to be produced in California, and that his permanent relationship commenced with a contract dated July 10, 1996. He then asserted: "On July 25, 1996 I was a resident of the state of California, and not a resident in any location whatsoever in the state of Florida." Respondent's Motion for Summary Judgment was withdrawn without a ruling by the Court.

## OPINION

Section 6321 provides:

SEC. 6321. LIEN FOR TAXES.

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

The lien generally arises at the time the assessment is made. Sec. 6322. Under section 6323, the lien is not valid against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until a notice of Federal tax lien meeting the requirements of section 6323(f) has been filed.

Section 6323(f)(1) specifies that a notice of Federal tax lien shall be filed as follows:

SEC. 6823(f).

(1) Place for filing.--The notice referred to in subsection (a) shall be filed--

(A) Under state laws.--

    *    *    *    *    *    *    *

(ii) Personal property.--In the case of personal property, whether tangible or intangible, in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which the property subject to the lien is situated, except that State law merely conforming to or reenacting Federal law establishing a national filing system does not constitute a second office for filing as designated by the laws of such State;

(B) With clerk of district court.--In the office of the clerk of the United States district court for the judicial district in which the property subject to the lien is situated, whenever the State has not by law designated one office which meets the requirements of subparagraph (A); * * *

The situs of personal property held by the taxpayer, whether tangible or intangible, is the residence of the taxpayer at the time the notice of Federal tax lien is filed.  Sec. 6323(f)(2)(B).  In this case, the pension plan is personal property.  Therefore, the situs of the pension plan is the State where the taxpayer resides and not the State where the pension plan is administered.

Under the Bankruptcy Code, 11 U.S.C. sec. 522(c)(2)(B) (2000), any property exempt from administration as part of the

bankruptcy's estate is unavailable to the creditors of the debtor, including the IRS, after a bankruptcy discharge, unless the creditor filed a valid lien prior to the commencement of the bankruptcy case.

Respondent acknowledges:

> The validity of the lien filings depends upon whether Florida was petitioner's "residence" within the meaning of 26 U.S.C. sec. 6323(f)(2) on the date the liens were filed. While a person can have more than one residence, the question is where creditors would believe he resided. Urban Industries, Inc. of Kentucky v. Thevis, 670 F.2d 981, 986 (11th Cir. 1982). * * *

The determination of petitioner's residence for this purpose is a question of fact. If we find as a fact that petitioner was not a resident of Florida on July 25, 1996, we need not deal with additional issues.

For reasons discussed below, we conclude that petitioner was a resident of Florida at the time that the liens were filed. As a result, we address the legal arguments concerning whether the liens were filed at the appropriate place in Florida and whether we should determine the amount of petitioner's pension that is subject to levy.

Petitioner's Residence in 1996

Petitioner argues that the burden of proof has shifted to respondent under section 7491 because petitioner produced credible evidence that he was a resident of California in 1996. Respondent argues that petitioner bears the burden of proof and

that section 7491 refers only to "any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B" and does not apply to this proceeding, which is established under subtitle F of the Internal Revenue Code.  Our decision in this case does not depend on which party has the burden of proof.  We resolve the factual issue on the preponderance of the evidence in the record.

In Corwin Consultants, Inc. v. Interpublic Group of Cos., 512 F.2d 605 (2d Cir. 1975), the Court of Appeals reviewed the legislative history of section 6323(f), which establishes the place of filing for Federal tax liens such as those in dispute here.  Noting that "residence" can have many different meanings depending on the context in which it is used, the Court of Appeals emphasized that the purpose of the statutory provisions for filing in the State of a taxpayer's residence was "to ease the burden for creditors in searching for federal tax liens and for the IRS in filing notices of such liens." Id. at 610.  The Court stated:

> In light of this purpose, the residence of a delinquent
> taxpayer is a question of fact to be determined by
> various criteria:  Among them are the taxpayer's
> physical presence as an inhabitant and not a mere
> transient, Myers v. Commissioner, 180 F.2d 969, 971
> (4th Cir. 1950); the permanence of that presence, In re
> Watson, 99 F. Supp. 49, 54 (W.D. Ark. 1951); the reason
> for his presence; and the existence of other
> residences.  In general, for this statute, where a
> taxpayer resides is where he dwells for a significant
> amount of time and where creditors would be most likely
> to look for him.  What proportion of time is

"significant" is not capable of exact definition and must be determined on a case by case basis, at all times keeping the purpose of the filing requirement in mind. [Id.]

See also Urban Indus., Inc. of Ky. v. Thevis, 670 F.2d 981, 986 (11th Cir. 1982); In re Saunders, 240 Bankr. 636, 641 (S.D. Fla. 1999).

In assessing the credibility of petitioner's claim that he was strictly a resident of California and not a resident of Florida on July 25, 1996, we also observe that his claim was raised belatedly. During the Appeals hearing, petitioner's representative argued that the Florida liens were invalid because the situs of the pension plan was in California. In the petition in this case, the same argument was made based on the administration and activities of the plan in California. Neither at the hearing nor in the petition did petitioner assert his current position, which is that he became a resident of California before the liens were filed. This argument was first raised in an affidavit dated April 10, 2002, in opposition to respondent's Motion for Summary Judgment.

Most significantly, however, petitioner's contemporaneous conduct and the objective evidence in the record contradict his belated claim that he was not a resident of Florida in 1996. He claims that, when he began employment on "The Drew Carey Show" on July 10, 1996, he permanently moved to California, first living on a friend's boat. He relies on his employment with Warner

Bros. as his evidence of California residence. His July 10, 1996, employment contract, however, guaranteed only 1 week of work. Explaining his necessity of living in California, petitioner testified: "In other words, if I lived in New York or Miami, they wouldn't want to go to the additional expense to hire me, because the contracts provide for additional compensation if you're working from out of your residence." He did nothing, however, that would indicate to other persons, particularly his creditors and the IRS, that he had moved. To the contrary, the addresses used by petitioner were all indicative of the residence in Florida.

Petitioner used Florida addresses on his Federal tax returns, Forms W-2, and bank accounts. He continued to use a Florida address on his checks and other banking records and on his Florida driver's license at least into 2003. His "loan-out" corporation, through which he was paid his salary, was a Florida entity with a Florida address. He did not file California income tax returns prior to the due date of his 1999 return. We conclude, therefore, that petitioner resided in Florida at the time that the liens were filed.

Place of Filing Within Florida

The liens in question in this case were filed with the Broward County Circuit Court in Fort Lauderdale, Florida.

Hallandale, Florida, the address at which petitioner resided at the time the liens were filed, is in Broward County.

Petitioner argues that Florida statutes provide two places for notices of Federal tax liens to be filed, to wit, with the secretary of state, "by analogy to a Uniform Commercial Code filing", and in the Circuit Court for the county in which the taxpayer resides, pursuant to the Uniform Federal Lien Registration Act (Registration Act). Because, petitioner contends, there are two places in which the notices of Federal tax lien could have been filed, "the only proper place was in the clerk's office of the United States District Court."

Under Florida's version of the Uniform Commercial Code (UCC), the office designated for filing is the Office of the Secretary of State. See Fla. Stat. ch. 679.401 (1996) (repealed effective Jan. 1, 2002, Fla. Stat. Ann. ch. 679.401 (West 2003)). Under the Registration Act, the proper place for filing is in the office of the clerk of the circuit court of the county where the person resides. See Fla. Stat. ch. 713.901 (1996); see also In re Wesche, 193 Bankr. 76, 77 (Bankr. M.D. Fla. 1996). Petitioner argues that the two statutes together provide for two separate places for the filing of a Federal tax lien. However, petitioner's argument fails because the Florida UCC does not apply to Federal tax liens. The policy and the subject matter of Florida's version of the UCC cover consensual security interests

created by contract or agreement.  See Fla. Stat. ch. 679.102 (1996) (repealed effective Jan. 1, 2002, Fla. Stat. Ann. ch. 679.102 (West 2003)); In re Bertelt, 206 Bankr. 579, 585 (Bankr. M.D. Fla. 1996).  This statute does not affect the filing of Federal tax liens within the State of Florida, which are instead governed by the Registration Act.  See In re Bertelt, supra at 584-585.  Under the Registration Act, the proper place for filing is the circuit court in the county where the taxpayer resides. Thus, there is one office within Florida where the Federal tax lien should be filed, and the liens in issue were filed in that place.

Value of Pension Plan Subject to Lien

Petitioner argues that, if the Court sustains the liens, which we have, we should further determine the value of petitioner's interest in the pension plan that is subject to the lien.  Petitioner argues that the value of the pension plan is limited to the value at the time the lien was filed and, further, that the lien, and any levy that might occur to enforce it, is subordinate to a claim by petitioner's former wife for 50 percent of the value.

Respondent contends that the Court does not have jurisdiction under section 6330 to determine the value of petitioner's asset at the time the bankruptcy proceeding was commenced.  Even if the Court concludes that it does have

jurisdiction, respondent contends, the Court should not address the issue in this case because it was not raised before the Appeals office. Additionally, respondent contends that, because the value of the pension plan does not affect the question of the validity of the lien, discussed above, but could only affect collection alternatives, we should review the Appeals officer's determination that collection should proceed only for abuse of discretion. Finally, respondent argues that the Court should not address the issue because the liens could potentially affect other assets owned by petitioner at the time the bankruptcy proceeding was commenced, that the value may be changed by the time of a levy that has not yet occurred, and that petitioner's former wife is not a party to this proceeding.

Petitioner is seeking a determination as to the amount of petitioner's pension subject to the liens filed in 1996 and, implicitly, a determination that no other assets of petitioner are subject to those liens. This argument was not made before the Appeals officer during the hearing because no alternatives to collection were raised. We agree with respondent that it would be inappropriate to anticipate, determine, and limit the scope of the liens on the record in this case. There may be circumstances under which the amount that is subject to the lien is necessarily a part of our determination of whether there was an abuse of discretion in rejecting collection alternatives. This is not

such a case. Petitioner suggests that we should determine the value because: "The amount of the tax may be determined under the authority of IRC sec. 6330." The amount of the liability, however, is not disputed in this case. Petitioner's arguments go only to "collectibility".

Petitioner also seeks a determination of the value of the pension plan subject to respondent's liens as an advisory opinion for the plan administrator. Nothing in section 6330 would extend our reach that far.

Conclusion

We have considered the other arguments made by the parties, including their dispute with respect to the standard of review of the issues in this case. We have concluded that petitioner was a resident of Florida at the time that the notices of lien were filed and that, therefore, those liens were valid with respect to his pension plan, the only asset identified as exempt from the bankruptcy proceedings and as personal property with a situs at petitioner's residence. These conclusions would be unaffected by resolution of the other disputes between the parties, and we therefore decline to address them. We sustain the determination of the Appeals office that it is appropriate for the IRS to pursue collection by issuing a notice of levy pursuant to the liens recorded in Florida in 1996.

To reflect the foregoing,

Decision will be entered

for respondent.